IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

**CARLTON SANDERS and**
**STEPHEN H. SMITH as Chapter 7 Bankruptcy**
**Trustee for CARLTON SANDERS**                                 **PLAINTIFFS**

**VS**                                            **CIVIL ACTION NO. 3:19-CV-721-DPJ-FKB**

**KOCH FOODS, INCORPORATED;**
**KOCH FARMS OF MISSISSIPPI, LLC, and**
**KOCH FOODS OF MISSISSIPPI, LLC**                              **DEFENDANTS**

**KOCH FOODS, INC.; KOCH FARMS OF MISSISSIPPI, LLC; AND KOCH FOODS OF MISSISSIPPI, LLC'S REPLY IN SUPPORT OF THEIR MOTION TO DISMISS**

Scott W. Pedigo (MS Bar No. 10735)
Amy L. Champagne (MS Bar No. 102477)
R. Christopher White (MS Bar No. 105509)
BAKER, DONELSON, BEARMAN,
    CALDWELL & BERKOWITZ, P.C.
100 Vision Drive, Suite 400 (39211)
P.O. Box 14167
Jackson, Mississippi 39236
Telephone:  (601) 351-2400
Facsimile:   (601) 351-2424
spedigo@bakerdonelson.com
achampagne@bakerdonelson.com
rcwhite@bakerdonelson.com

## **TABLE OF CONTENTS**

I.     Sanders Fails to Show His Claims Are Not Time-Barred. ...................................... 2

       A.    Sanders's arguments in favor of applying the Sherman Act's four-year statute of limitations to his PSA claims are meritless. ................................ 2

II.    Sanders's Claims Were Not Tolled. ........................................................................... 5

III.   Sanders's PSA Claims Also Fails on the Merits. ....................................................... 8

       A.    Sanders's claim of "scrivener's errors" cannot save his regulatory-violation PSA claims. ..................................................................................... 8

       B.    Sanders has not pleaded the requisite injury to competition. ....................... 8

IV.   Sanders's Fraud Claim Also Fails on the Merits. ..................................................... 10

V.    Sanders Conceded His Misrepresentation Claim. ................................................... 11

## INTRODUCTION

As set forth in Koch's opening brief, Sanders's PSA, breach of contract, fraud and misrepresentation claims should be dismissed both because they were untimely filed and because each of the claims fails as a matter of law. Rather than make a concerted effort to respond to Koch's substantive arguments to save his claims, Sanders instead seemingly focuses his energies on "weaving a good tale" filled with a catalogue of irrelevant conduct supposedly occurring within the limitations period. But even the litany of unsubstantiated and inflammatory accusations of alleged racist and unlawful conduct by Koch that Sanders recites cannot fill the fatal voids in Sanders's Amended Complaint.

Sanders fails to carry his burden of showing that his PSA and state law claims are not time-barred. Relying on arguments expressly rejected by the U.S. Supreme Court and cases involving statutes distinguishable from the PSA, Sanders fails to satisfy *Prostar v. Massachi's* test of showing that borrowing the three-year limitations period applicable to claims under Mississippi's Antitrust Act would frustrate the PSA's underlying policies or impede its implementation. Thus, Sanders's PSA claim is governed by the three-year statute of limitations.

Sanders chooses not to address directly the dates on which each of his claims accrued, but attempts to confuse the limitations issue by citing a litany of dates and alleged actions by Koch within the limitations period and arguing only generally that all of his claims are saved by the continuing violation doctrine. Sanders's focus on the USDA's investigation and the ultimate foreclosure and sale of his property, however, fails to establish any relevant conduct by Koch within the limitations period. At best, Sanders establishes that Koch maintained a consistent position with respect to the events giving rise to his claims and that he allegedly suffered continuing injuries. Neither is enough to save his time-barred claims.

Even if Sanders's claims had been timely filed, he has tacitly conceded that his statutory-

violation-based PSA claims, fraud, and misrepresentation claims are subject to dismissal on the merits.

Count I through VI of the Amended Complaint should be dismissed with prejudice.

## ARGUMENT

### I. Sanders Fails to Show His Claims Are Not Time-Barred.

"[T]he Fifth Circuit has cautioned that '[e]quitable tolling is to be applied "sparingly."'" *Diaz v. U.S.*, 789 F. Supp. 2d 722, 730 (S.D. Miss. 2011) (quoting *Granger v. Aaron's, Inc.*, 636 F.3d 708, 712 (5th Cir. 2011)). "And even when equitable tolling is possible, '[t]he plaintiff has the burden to provide justification for equitable tolling.'" *Id*. Because Sanders has failed to carry this burden, his PSA and state law claims should be dismissed with prejudice.

### A. Sanders's arguments in favor of applying the Sherman Act's four-year statute of limitations to his PSA claims are meritless.

Sanders argues that the four-year statute of limitations applicable under the Sherman Act should govern his PSA claims. But both his claims that application of the Mississippi Antitrust Act's three-year limitations period would frustrate the policies underlying the PSA and that the Sherman Act is clearly more analogous to the PSA than Mississippi's Antitrust Act are misplaced under governing precedent. This Court should therefore borrow Mississippi's three-year statute of limitations and hold Sanders's PSA claims time-barred.

Sanders begins by citing *Wheeler v. Pilgrim's Pride Corp.*, 591 F.3d 355 (5th Cir. 2008), for the proposition that it mandates consistent and predictable application of the PSA. [Dkt. 20, p. 7] He then argues that applying state limitations periods to PSA claims would "undermine the implementation of the PSA" because differing limitations periods would create uncertainty and present an opportunity for forum shopping, but he does not explain how forum shopping would ultimately result in inconsistent application of the statute. [Dkt. 20, p. 9-10] Sanders's arguments should be rejected.

2

As an initial matter, the *Wheeler* Court's emphasis on consistency was in the context of considering whether to follow its sister circuits in holding that the PSA requires proof that a challenged practice has or could result in "injury to competition." Thus, the Court's emphasis on consistent application of the statute's substantive law provides no support for undermining the Supreme Court's confirmation that the state limitations period should be the "lender of first resort" when a federal statute lacks a specified limitations period. *North Star Steel Co. v. Thomas*, 515 U.S. 29, 34 (1995). Second, with respect to the borrowing of states' statutes of limitations, the Supreme Court has explicitly held that the "general preference for uniformity, even if to avoid forum shopping, is an insufficient reason to apply the limitations period of the closest federal analog." *Kingvision v. Pay-Per-View Corp., Ltd.*, 366 F.3d 217, 222 (3d Cir. 2004) (citing *North Star*, 515 U.S. at 36).

In *North Star*, the Supreme Court rejected the invitation to abandon the general rule of applying the closest state law analog where Congress does not legislate a limitations provision for a federal cause of action, explaining that forum shopping was simply a risk of the rule:

> But even taking petitioners on their own terms, they make no case for choosing the exception over the rule. They are right, of course, that the practice of adopting state statutes of limitations for federal causes of action can result in different limitations periods in different States for the same federal action, and correct that some plaintiffs will canvass the variations and shop around for a forum. But these are just the costs of the rule itself, and nothing about WARN makes them exorbitant.

515 U.S. at 36. The Court further acknowledged that "'practicalities of litigation' [had] influenced [the Court's] rationale for adopting a uniform federal rule for civil action under RICO," but declined to do the same because WARN did not "share the 'multistate nature' of RICO." *Id*. at 37. The PSA also does not have an inherently "multistate nature." Unlike the RICO claims in *Agency Holding Corp. v. Malley-Duff & Associates, Inc.*, 483 U.S. 143 (1987) and the Federal Communications Act claims in *Prostar v. Massachi*, 239 F.3d 669, 676 (5th Cir.

3

1997), a plaintiff's claims under the PSA are unlikely to arise in multiple jurisdictions. While Koch has operations in several states, its chicken growers and the poultry growing arrangements to which the PSA applies, which are inherently tied to the land where the poultry is raised, do not. Thus, application of varying state limitations periods will not frustrate the PSA's underlying policies or impede its implementation.

Because Sanders has failed to show that applying Mississippi's three-year statute of limitations will frustrate the PSA's purposes or impede its implementation, the Court need not address his argument that the Sherman Act is the most analogous federal statute. But even if Sanders could somehow overcome the first hurdle, Mississippi's limitations period should still apply. Indeed, to apply the Sherman Act's limitations period as urged by Sanders, the Court must find **both** that the Sherman Act (1) "***clearly*** provides a closer analogy than state statutes" and (2) the federal policies at stake and the practicalities of litigation make the Sherman Act "a ***significantly*** more appropriate vehicle for interstitial lawmaking." *North Star*, 515 U.S. at 35 (emphasis added).

Sanders addresses neither requirement, but instead imprudently relies on *Jackson v. Swift-Eckrich*, 830 F. Supp. 486 (W.D. Ark. 1993) for the proposition that the Sherman Act should be applied over the Mississippi Antitrust Act. [Dkt. 20, p. 7-9]  In *Jackson*, the Arkansas district court found that the Arkansas Unfair Practices Act was not the most analogous state law to the PSA simply because "the Arkansas Unfair Practices Act . . . does not itself contain its own statute of limitations."[1]  830 F. Supp. at 498. But unlike courts within the Eighth Circuit, our courts do not disfavor applying Mississippi's "catch-all" limitations period to a federal cause of action without a limitations period when it would otherwise apply to the most analogous state

---

[1] Also, *Jackson* arose before *North Star* and therefore applied a pre-*North Star* analysis that is no longer applicable. 830 F. Supp. at 495-96.

4

statute. *See, e.g., Banks v. Jockey Int'l, Inc.*, 996 F. Supp. 576 (N.D. Miss. 1998) (applying Mississippi's three-year "catch-all" limitations to an ERISA § 510 claim); *see also Burditt v. Kerr-McGee Chem. Corp*, 982 F. Supp. 404, 407 (N.D. Miss. 1997) (same). *Jackson* is not controlling and is unpersuasive, especially in light of the Fifth Circuit's holding that "Mississippi antitrust claims are 'analytically identical' to federal antitrust claims." *Waggoner v. Denbury Onshore, L.L.C.*, 612 F. App'x 734, 736 n.2 (5th Cir. 2015).

## II.     Sanders's Claims Were Not Tolled.

With the exception of his PSA claim, Sanders does not dispute that a three-year statute of limitations applies to the claims that Koch has moved to dismiss.  Rather than address directly the specific dates that Koch argues on which each of his claims accrued and explain why his proffered events and corresponding dates should be deemed to support a finding that the commencement of his claims falls within limitations period, Sanders instead recites a litany of irrelevant events and dates and argues generally that the "continuing violations doctrine" saves all of his untimely claims because "the injury alleged by Plaintiff Sanders is continuing."  [Dkt. 20, p, 2-3, 11]  The continuing violation doctrine, however, even if it was available in theory to toll the claims, focuses on the continuing nature of the *conduct* giving rise to a claim, not the continuing nature of any resulting *damages*.  Under Mississippi law, a "continuing tort":

> is one inflicted over a period of time; it involves a wrongful conduct that is repeated until desisted, and each day creates a separate cause of action. A continuing tort sufficient to toll a statute of limitations is occasioned by continual unlawful acts, not by continual ill effects from an original violation."

*Milam v. Kelly*, 282 So. 3d 682, 692 (Miss. Ct. App. 2019) (quoting *Humphries v. Pearlwood Apartments P'ship*, 70 So. 3d 1133, 1135 (Miss. Ct. App. 2011)).  "[T]he continuing-tort doctrine will not be applicable where the harm results from one wrongful act or omission." *Id.* (quoting *Humphries*, 70 So. 3d at 1135).  "In other words, a statute of limitations would be rendered ineffectual if it were tolled until the wrong was righted." *Woodard v. Sears, Roebuck,*

*& Co.*, No. 3:12-cv-345-HTW-MTP, 2013 WL 5335331, at *4 (S.D. Miss. Sept. 23, 2013); *see also Brown-Howle v. Cmty. Bank*, 2018 WL 5262634, at *5 (Miss. Ct. App. 2018) (finding ultimate foreclosure of plaintiff's home to be a continued ill effect insufficient to render the fraud "continuing" in nature).[2]  Sanders's claims are not "continuing" in nature.

Sanders's PSA claims are premised on Koch's alleged refusal to place birds with Sanders unless he performed "23 upgrades." [Dkt. 8, ¶¶ 110-123]  In his Response, Sanders attempts to save his untimely claim by arguing that Koch allegedly conspired with banks to deny his son a loan needed to redeem Sanders's farm from foreclosure. Sanders argues that these actions tolled his PSA claim through 2019 when his property was sold to another. [Dkt. 20, p. 19]  Any such conspiracy, even if true, is not actionable under the PSA and was action allegedly taken against Sanders's son, not Sanders.  Moreover, as to Sanders, the allegations are nothing more than alleged continuing ill effects of a claim that arose years before.

Similarly, none of the alleged "continuing violations" identified by Sanders save his time-barred state law breach of contract, fraud, or misrepresentation claims.  In support of his tolling argument, Sanders alleges that Koch (1) "failed to properly terminate the contracts by serving Sanders with a 90-day notice of termination; (2) "failed to give him Broiler Reports (even as late as September 2018)";[3] (3) impeded his ability to get additional funding";[4] and (4) led him to believe, during the duration of the USDA-led negotiations, that Koch would resume

---

[2] Sanders's attempt to analogize his case to a hostile work environment is entirely inappropriate.  This is not an employment action.  In addition, unlike those who might suffer ongoing discrimination in a hostile work environment, Sanders complains of discrete discriminatory acts.  And the Supreme Court has held that the "continuing violations exception …is inapplicable to discrete acts of discrimination*.*" *Berry v. Allstate Ins. Co*., 84 F. App'x 442, 444-45 (5th Cir. 2004) (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 110-21 (2002)).  Further, Sanders knew enough to file a claim with the USDA, so his suggestion that it "it was unreasonable to expect that Sanders would know to sue," is disingenuous at best. [Dkt. 20, p 14 n. 6]

[3] Sanders's reference to 2018 is misleading in that it is simply the date when he executed an Affidavit stating he did not receive the 2015 and 2016 reports.

[4] Even if relevant, this allegation, founded on Koch's alleged failure to respond to PriorityOne's October 2015 email seeking additional information, would not toll Sanders's claims beyond 2015.

delivering him chicks if he made ten of the "23 upgrades." [Dkt. 20, p. 13-14] But none of these allegations form the basis of Sanders's breach of contract, fraud, or misrepresentation claims as pleaded in the Amended Complaint. [*See* Dkt. 8, ¶ 70 (Koch "breached the contract by failing and refusing to provide Sanders with chickens"), ¶¶ 126, 133, 143, 145 (if Sanders "grew good birds, he would continue to receive placements of baby chicks from Koch" and other alleged fraudulent statements regarding institutional commitments), and ¶ 156 (Koch misrepresented it would not continue to place birds unless Sanders performed upgrades)]

Not only does Sanders fail to cite any contractual provision requiring Koch to provide Broiler Reports, to assist him in securing financing, or to agree to a settlement of his claims, he has not pleaded any allegation that Koch made any misrepresentation with respect to any of the four purported continuing violations. Sanders is desperately attempting to salvage his stale claims by focusing on the recent foreclosure and loss of his farms. But those facts represent nothing more than the alleged ill effects of Koch's alleged breach, fraud, and misrepresentation, not evidence of continuing violations giving rise to his claims. *See Jourdan River Estates, LLC v. Favre*, 278 So. 3d 1135, 1150 (Miss. 2019) (quoting *Stevens v. Lake*, 615 So. 2d 1177, 1183 (Miss. 1993)) (continued impediment to development of property not a continuing tort; alleged 'harm reverberate[d] from a single, one-time act or omission.").

Finally, the fact that Koch maintained its position about refusing to deliver birds to Sanders throughout the USDA investigation does not constitute a continuation of its alleged breach or misrepresentation. Continuing to hold a position originally announced does not render the claim continuing in nature. *Peavey Elecs. Corp. v. Baan U.S.A., Inc.*, 10 So. 3d 944, 955 (Miss. Ct. App. 2009) ("if [defendant] fraudulently induced [plaintiff] to purchase defective software, the tort was completed with the purchase"; "[defendant's] subsequent denials that the software it tendered was defective, even if false, does not transform this into a 'continuing'

7

tort"). Sanders went to the USDA with his race discrimination claim in December 2015—at which point each of the alleged actions by Koch that form the basis of his causes of action had already occurred. Sanders was dilatory in bringing this suit, and he cannot rely on the continuing tort doctrine to save his untimely claims.

### III.     Sanders's PSA Claims Also Fails on the Merits.

Despite pleading Count II as a seemingly separate cause of action in his Amended Complaint, Sanders now concedes that he has no separate cause of action for enforcement of the regulations implemented pursuant to the PSA apart from his claim that Koch violated the statute itself. [*See* Dkt. 20, p. 15]

#### A.     Sanders's claim of "scrivener's errors" cannot save his regulatory-violation PSA claims.

Sanders responds to Koch's arguments in favor of dismissal of his regulatory-violation PSA claims by "conceding" his Amended Complaint included "scrivener's errors" and suggesting that he be permitted to amend his complaint to cite 9 C.F.R. § 201.100 in place of §§ 201.200(a) and 201. But such an amendment would be futile. Indeed, by failing to address the merits of Koch's arguments for dismissal of his §§ 201.100,[5] 201.216, and 201.217 claims, Sanders has tacitly conceded they should be dismissed as a matter of law.

#### B.     Sanders has not pleaded the requisite injury to competition.[6]

Again, Sanders makes no meaningful attempt to save his PSA claims from dismissal. He

---

[5] Sanders admits that "Defendants may have included language contained in the PSA in the contracts," but merely states that "they did not comply with the requirements." [Dkt. 20, p. 16]. Not only is such a passing remark wholly insufficient to avoid dismissal, *see, e.g., Wong v. Lighthouse Point, LLC*, No. 4:16-cv-109-DMB-JMV, 2017 WL 6028356, at *9 (N.D. Miss. Dec. 5, 2017) (quoting *Vargas-Colon v. Fundacion Damas, Inc.*, 864 F.3d 14, 24 (1st Cir. 2017)) ("It is not enough to merely mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create ossature for the argument, and put flesh on its bones."), Section 200.100, governs only what a poultry growing arrangement "shall clearly specify." 9 C.F.R. § 201.100(c). Nothing in the regulation addresses compliance with the provisions of the contract.

[6] Sanders's argument that proof of competitive injury is not necessary to state a viable claim under the PSA is foreclosed by Fifth Circuit precedent. *Wheeler v. Pilgrim's Pride Corp.*, 591 F.3d 355, 363 (5th Cir. 2009).

does not address Koch's arguments that his Amended Complaint fails to properly allege how Koch's conduct with respect to him personally has or could result in a competitive injury. Instead, Sanders attempts to excuse the fatal deficiencies in his pleading by arguing that "it is difficult to put into words without offending a population of people" and that "[e]xperts will be better equipped to calculate how Defendants have gained a monetary edge over their competitors through their systematic elimination of black farmers to grow chickens for their companies." [Dkt. 20, p. 17]  Accepting such an argument in response to a motion to dismiss would essentially nullify the requirement that Sanders's plead all elements of his claim.

Sanders does not even try to defend his pleaded allegations that Koch's alleged conduct towards him individually will somehow result in competitive injury by impacting the prices paid by consumers and reducing the poultry supply in the MS geographical area.  [Dkt. 8, ¶123] Indeed, Sanders seemingly abandons those contentions and instead attempts to fill the fatal gap in his case by focusing his Response on the "story" of Koch's alleged historic racism.  [See Dkt. 20, p. 17-18]  The only references to any potential competitive injury even alluded to in his Response are the bald statements that Koch's "unjust and discriminatory practices are likely to harm competition by prohibiting other potential black farmers and the son of Sanders from entering the contract chicken growing business" and Koch's "final elimination of its black farmers gave Defendants an unfair advantage and a perception in the industry of a competitive edge over their competitors." [Dkt. 20 at 17-18]

But the fact remains that Sanders has only alleged a single injury to a single grower, which is not subject to the PSA's protections. *In re Pilgrim's Pride Corp.*, 728 F.3d 457, 462 (5th Cir. 2013) (The PSA protects against "conduct which unfairly tends to destroy competition itself . . .  not out of solicitude for the private citizen but out of concern for the public interest."); *see also Terry v. Tyson Farms, Inc.*, 604 F.3d 272, 279 (6th Cir. 2010) (holding that PSA claim

9

focusing on a single injury to a single grower without any "allegations regarding the effect of Defendant's action on the pricing of poultry or on overall competition in the poultry industry" is insufficiently pled and must be dismissed.).  Sanders's PSA claims should be dismissed.

### IV.     Sanders's Fraud Claim Also Fails on the Merits.

Koch argued that Sanders's fraud claim fails because (1) promises of future conduct cannot support a fraud claim under Mississippi law and (2) it was not pleaded with the requisite particularity. [Dkt. 15, p. 22-24]  Sanders responded only to the second argument. [Dkt. 20, p. 18]  Thus, Sanders has conceded that his fraud claim should be dismissed as a matter of law.

Even if Sanders's allegations that "Koch represented to Plaintiff Sanders that if he grew good birds, he would continue to receive placements of baby chicks," [Dkt. 8, ¶ 126] could support a fraud claim here, his Amended Complaint does not meet the applicable pleading standard for fraud claims in this circuit.  Rather than demonstrate how his complaint satisfies Rule 9(b), Sanders "steers" the Court to an opinion from the Western District of Kentucky, which interprets Rule 9(b) differently than this Court and the Fifth Circuit.  Specifically, the Western District of Kentucky found that "it is not necessary to recite each minute detail . . . but the threshold test is whether the complaint places the defendant on sufficient notice of the misrepresentations allowing the defendants to answer, addressing in an informed way the plaintiffs' claim of fraud."  [Dkt. No. 19-2, pp. 61-62 (internal citations omitted)]  But "[t]he Fifth Circuit 'interprets Rule 9(b) strictly . . . .'" and, under that strict interpretation, Sanders's fraud claim fails if it is missing any of the required particularities.  *Eaton v. GuideOne Am. Ins. Co.*, No. 3:18-cv-783-DPJ-FKB, 2019 WL 2437477, at *3 (S.D. Miss. June 11, 2019) (quoting *Dorsey Portfolio Equities, Inc.*, 540 F.3d 333, 339 (5th Cir. 2008)) (dismissing fraud claim for failure to plead the content with particularity, where and when the statements were made, and how the statements were false).

10

Because Sanders's complaint fails to set forth the who, what, where, when, how, or the specific allegedly fraudulent statement made by Koch, his fraud claim must be dismissed.

### V.   Sanders Conceded His Misrepresentation Claim.

Sanders failed to respond to Defendants' arguments that (1) the Amended Complaint does not state a proper misrepresentation claim and (2) he cannot replead to properly state a misrepresentation claim. Sanders's misrepresentation claim, therefore, should be dismissed with prejudice.

### CONCLUSION

For all of the reasons set forth above, Koch respectfully requests that the Court dismiss Counts II through VI of Plaintiffs' Amended Complaint with prejudice.

Respectfully submitted January 24, 2020.

*/s/Scott W. Pedigo*
SCOTT W. PEDIGO

**OF COUNSEL:**

Scott W. Pedigo (MS Bar No. 10735)
Amy L. Champagne (MS Bar No. 102477)
R. Christopher White (MS Bar No. 105509)
BAKER, DONELSON, BEARMAN,
 CALDWELL & BERKOWITZ, P.C.
One Eastover Center
100 Vision Drive, Suite 400 (39211)
P.O. Box 14167
Jackson, Mississippi 39236
Telephone:  (601) 351-2400
Facsimile:   (601) 351-2424
spedigo@bakerdonelson.com
achampagne@bakerdonelson.com
rcwhite@bakerdonelson.com

Attorneys for Koch Foods, Inc.; Koch Farms of Mississippi, LLC; and Koch Foods of Mississippi, LLC