UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

CARLTON SANDERS and
STEPHEN H. SMITH, as Chapter 7 Bankruptcy
Trustee for CARLTON SANDERS                                                              PLAINTIFFS

V.                                                                        CIVIL ACTION NO. 3:19-CV-721-DPJ-FKB

KOCH FOODS, INC.; KOCH FARMS OF MISSISSIPPI, LLC;
and KOCH FOODS OF MISSISSIPPI, LLC                                              DEFENDANTS

ORDER

This lawsuit asserts that a poultry company discriminated against and mistreated a black poultry grower. The case is before the Court on motion of Defendants Koch Foods, Inc.; Koch Farms of Mississippi, LLC; and Koch Foods of Mississippi, LLC (collectively "Koch") to dismiss all but one claim asserted by Plaintiffs Carlton Sanders and Bankruptcy Trustee Stephen H. Smith. Having considered the parties' submissions, the Court rules as follows: (1) Carlton Sanders is dismissed, the Trustee is the real party in interest, and all claims are deemed timely; (2) Koch's motion to dismiss for failure to state a claim is granted as to the state-law fraud and misrepresentation claims; and (3) Koch's motion to dismiss is granted as to claims asserted under the Packers and Stockyards Act.

I.    Facts and Procedural History

Sanders, a black poultry farmer, believes Koch discriminated against him because of his race. Sanders operated two poultry farms in Lena, Mississippi, and entered into two separate Broiler Growing Agreements with Koch in 2001. Under these agreements, Koch delivered chicks, Sanders would house and raise those chicks in a manner consistent with Koch's specifications, and Koch later picked up the birds for transport to slaughter. Sanders operated Class B housing, which has lower specifications and a lower pay rate than Class A housing.

According to Sanders, in 2014, Koch required him to make 22 upgrades to his farm totaling $197,000. Am. Compl. [8] at 7. He claims Koch "assured [him] that these were all the upgrades he would need to make, and in reliance of this, he borrowed money" and executed the changes. *Id.* Then, in February 2015, Koch informed Sanders of new minimum standards for ventilation in its growers' poultry houses—wind speed for cooling and static pressure for heating. *Id.* Sanders maintains that his houses already met the wind-speed requirement and the static-pressure modification was minimal, costing approximately $7,000. *Id.*

But things changed in November 2015 when Koch purportedly sent Sanders a letter mandating 23 upgrades, costing approximately $318,000. *Id.* at 8. Sanders claims these upgrades included items necessary to be a Class A grower (which he was not). And he says white farmers were required to make only two upgrades, not 23. *Id.* He concluded that the differential treatment was racially motivated and filed a race-discrimination complaint with the United States Department of Agriculture (USDA). *Id.* at 11.[1]

Sanders was unable to obtain financing to make these improvements, and it appears he never made one of the improvements required for Class B houses. *See id.* at 7 ("The static pressure on Sanders's farm was only .05 apart from the .10 it needed to be, and it was *going to* cost Sanders about $7,000 ($1,000 per house) to make this increase." (emphasis added)); *id.* (neglecting to state definitively if the static-pressure improvement was made). Koch stopped

---

[1] Koch offers a different spin on the 23 upgrades, characterizing Plaintiffs' Amended Complaint as averring that "Sanders expressed interest in upgrading his aging houses to the higher paying Class A specification." Koch Mem. [15] at 6 (citing Am. Compl. [8] at 7, 14–16). Koch then states that it merely provided Sanders the information he requested. *Id.* While this factual point appears to form the foundation for Koch's theory of the case, it fails to faithfully recount what Plaintiffs actually alleged—indeed they said just the opposite. According to Plaintiffs, Koch representatives "approached Plaintiff Sanders with verbal demands that Sanders again conduct more expensive upgrades." Am. Compl. [8] at 7. Under the Rule 12(b)(6) standard, the Court assumes the facts are as Sanders describes them regarding the 23 upgrades.

delivering chicks. *Id.* at 10–11. The loss of income prompted Sanders to file for bankruptcy on July 27, 2018, and Plaintiff Stephen H. Smith was appointed as the Chapter 7 Bankruptcy Trustee. Sanders says his property was ultimately sold for less than fair-market value to a relative of a Koch employee. *Id.* at 19.

Plaintiffs (Sanders and the Trustee) filed suit, contending that because of Koch's conduct, Sanders

> lost his home, farm and livelihood, suffered serious health consequences, including a stroke and heart attack, lost his wife to divorce, endured relentless stress and pressure, was forced into a Chapter 7 bankruptcy, endured the profound impact of ongoing race discrimination[] and retaliation for not complying with Koch's impossible demands, and has been stereotypically reduced to living on food stamps and food caught through fishing and hunting for his main sustenance.

*Id.* at 20. In their Complaint, Plaintiffs advance the following causes of action: (1) racial discrimination in violation of 42 U.S.C. §1981 (Count I); (2) violation of the Packers and Stockyards Act (PSA) (Counts II and III); (3) fraud (Count IV); (4) breach of contract (Count V); and (4) negligent, willful, and reckless misrepresentation (Count VI). Koch seeks dismissal of Counts II, III, IV, V, and VI. It did not seek dismissal of the race-discrimination claim (Count I).

II.     Koch's Motion to Dismiss

Koch challenges Plaintiffs' Complaint in two ways. First, Koch says Plaintiffs' PSA, breach-of-contract, fraud, and negligent-misrepresentation claims are time barred. Second, it contends that those same claims—other than the breach-of-contract claim in Count V—fail to state a claim.

A.      Statute of Limitations

The statute-of-limitations issues are now moot. As originally briefed, the parties disputed the applicable limitations periods and when they were triggered—a discussion that raised issues

of apparent first impression within this circuit. But in their sur-reply, Plaintiffs asserted that Stephen Smith, as the Chapter 7 Bankruptcy Trustee, had an additional two years from the filing of Sanders's bankruptcy petition to file suit. Pls. Mem. [38] at 1–2 (citing 11 U.S.C. § 108(a)(2)). Koch agreed, "concede[ing] that *only* Plaintiff Stephen H. Smith's claims, as Trustee, were timely filed pursuant to 11 U.S.C. § 108(a)(2)." Koch Mem. [40] at 1 (emphasis in original).

As for Sanders's claims, Koch asserted that they remained stale but that they should alternatively be dismissed because Sanders is not a real party in interest. According to Koch, once Sanders sought protection in bankruptcy, his assets became assets of the bankruptcy estate, leaving the Trustee with exclusive standing to pursue these claims. *Id.* at 1 n.2.

The relevant portions of the bankruptcy code support this position. For example, 11 U.S.C. § 323(a) provides that the "trustee in a case under this title is the representative of the estate," and § 323(b) explains that the "trustee in a case under this title has the capacity to sue and be sued." Likewise, § 704(a)(1) requires the trustee to "collect and reduce to money the property of the estate for which such trustee serves." As the Fifth Circuit summarized,

> Section 541 of the Bankruptcy Code provides that virtually all of a debtor's assets, including causes of action belonging to the debtor at the commencement of the bankruptcy case, vest in the bankruptcy estate upon the filing of a bankruptcy petition. 11 U.S.C. § 541(a)(1); *In re Swift*, 129 F.3d [792, 795 (5th Cir. 1997)]; 5 COLLIER ON BANKRUPTCY § 541.08. Thus, a trustee, as the representative of the bankruptcy estate, is the real party in interest, and is the only party with standing to prosecute causes of action belonging to the estate once the bankruptcy petition has been filed. 11 U.S.C. §§ 323, 541(a)(1); *Wieburg* [*v. GTE Southwest, Inc.*], 272 F.3d [302, 306 (5th Cir. 2001)].

*Kane v. Nat'l Union Fire Ins. Co.*, 535 F.3d 380, 385 (5th Cir. 2008) (reversing district court's denial of trustee's motion to substitute himself for the debtors as the real party in interest).

Because the bankruptcy code and case law support Koch's position, the Court finds that

the Trustee is the real party in interest.  Sanders should be dismissed from this action pursuant to Federal Rule of Civil Procedure 21, which states that "[m]isjoinder of parties is not a ground for dismissing an action.  On motion or on its own, the court may at any time, on just terms, add or drop a party.  The court may also sever any claim against a party."  *See Alexander v. C.R. Bard, Inc.*, No. 3:13-CV-5187-O, 2014 WL 12602871, at *8 (N.D. Tex. Feb. 26, 2014) (applying Rule 21 and substituting the Trustee as the real party in interest).  But as Koch concedes, the Trustee had an additional two years to file suit, so the claims he advances are considered timely.[2]

B.  Failure to State a Claim

Koch alternatively argues that the PSA, fraud, and misrepresentation claims in Counts II, III, IV, and VI should be dismissed under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.  Unfortunately, the bulk of the Trustee's response addressed the statute of limitations, often leaving the Court with little to nothing to go on.  *See* Pls. Mem. [20] at 16–18 (devoting only the last two pages in response to Koch's merits arguments).

1.  Rule 12(b)(6) Standard

When considering a motion under Rule 12(b)(6), the "court accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'"  *Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004) (quoting *Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999) (per curiam)).  But "the tenet that a court must accept as true

---

[2] Admittedly, the Trustee had no opportunity to respond to Koch's argument that he was the real party in interest because it was raised in response to the sur-reply.  But the Court finds this approach legally sound and preferable to delving into an unsettled area of the law—that being what statute of limitations applies to the PSA claims.  *See Jackson v. Swift-Eckrich*, 830 F. Supp. 486, 495–99 (W.D. Ark. 1993) (debating whether to borrow a state or federal statute of limitations for a PSA claim).  That said, if the Trustee wishes to challenge this finding, he may certainly pursue a motion for reconsideration as to those claims that are not otherwise subject to dismissal.

5

all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). To overcome a Rule 12(b)(6) motion, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id*. at 555 (citations and footnote omitted).

       2.      State-Law Claims

Looking first to the state-law claims, Koch seeks dismissal of the fraud and misrepresentation claims for failure to state a claim. It does not challenge the breach of contract claim.

       a.      Fraud

Koch advances two arguments for dismissing the Trustee's fraud claim: (1) promises of future conduct are insufficient to support a fraud claim under Mississippi law, and (2) the Trustee failed to plead the fraud claim with the requisite particularity. Koch Mem. [15] at 25–26.

To state a claim for fraud, a plaintiff must prove:

> 1) a representation; 2) its falsity; 3) its materiality; 4) the speaker's knowledge of its falsity or ignorance of its truth; 5) his intent that it should be acted upon by the person and in the manner reasonably contemplated; 6) the hearer's ignorance of its falsity; 7) his reliance on its truth; 8) his right to rely thereon; and 9) his consequent and proximate injury.

*Gulf Coast Hospice, LLC v. LHC Grp., Inc.*, 273 So. 3d 721, 742 (Miss. 2019).

Fraud claims, including state-law fraud claims, are subject to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b). *See Dorsey v. Portfolio Equities, Inc.*, 540

F.3d 333, 338–39 (5th Cir. 2008) (noting federal and state-law fraud claims are subject to a "heightened level of pleading"). "[The Fifth Circuit] interprets Rule 9(b) strictly, requiring a plaintiff pleading fraud to specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Id.* at 339 (quoting *Herrmann Holdings Ltd. v. Lucent Techs. Inc.*, 302 F.3d 552, 564–65 (5th Cir. 2002)).

Here, Koch describes the fraud claim as alleging that "Koch promised that 'if [Sanders] grew good birds, he would continue to receive placements of baby chicks.'" Koch Mem. [15] at 25 (quoting Am. Compl. [8] at 32 (¶ 126)); *see also* Am. Compl. [8] at 36 (¶ 145) ("Defendant Koch's representations that he would receive chickens and continue to receive chickens were the primary inducements for Plaintiff Sanders to enter into the Poultry Growing Agreement with Defendant Koch, to initially and repeatedly borrow money from PriorityOne, as well as to expend his own funds on his chicken houses to meet Koch's shifting demands."). Koch says these promises were not incorporated into the Growing Agreements and points out the alleged fraud was the "breaking of those oral promises—some 13 years after they were supposedly made." Koch Mem. [15] at 25. The Trustee does not challenge this abbreviated characterization of the fraud claim in response. *See* Pls. Mem. [20] at 18.

If that is the claim, then it fails. As Koch points out, courts have repeatedly held "'that even in cases where fraud is alleged, a promise of future conduct does not meet the requirement of a "representation" unless the promise was made with the present intent not to perform[.]'" *Gulf Coast Hospice*, 273 So. 3d at 742 (quoting *Bank of Shaw v. Posey*, 573 So. 2d 1355, 1360 (Miss. 1990)) (alteration in *Gulf Coast Hospice*). Here, the Trustee merely pleaded that the alleged representation "turned out to be false" some 13 years later. Am. Compl. [8] at 36. And

the Trustee never addresses Koch's argument that such averments fail Rule 12(b)(6)'s plausibility test. *See* Pls. Mem. [20] at 18; *see also* Koch Reply [24] at 12 (concluding Sanders conceded that his fraud claims should be dismissed).

The Trustee also neglects to squarely address Koch's argument that the Amended Complaint fails to plead the fraud claim with the required particularity. Koch Mem. [15] at 26. Instead, the Trustee offers the conclusory assertion that "[t]his case is rich with evidence of fraud and misrepresentation and is pleaded in compliance with Rule 9(b)." Pls. Mem. [20] at 18. How so? The Trustee cites no factual averments in the Amended Complaint that indicate who at Koch made the material representations, when he or she made them, or where he or she made them. Am. Compl. [8] at 32; *see Howard v. Estate of Harper ex rel. Harper*, 947 So. 2d 854, 861 (Miss. 2006) (dismissing fraud claims where the complaint "does not specify the date or locations the allegedly fraudulent statements were made").

In short, the Trustee's "allegations in no way particularize the representations [Koch] actually made, where or when [it] made them, or how they were false." *Eaton v. GuideOne Am. Ins. Co.*, No. 3:18-CV-783-DPJ-FKB, 2019 WL 2437477, at *3 (S.D. Miss. June 11, 2019) (noting the Fifth Circuit's strict interpretation of Rule 9(b) and dismissing fraud claim), *aff'd* 2020 WL 3421659, at *1 (5th Cir. June 22, 2020). And absent some explanation from the Trustee defending this claim, it appears that he has pleaded his best case. The fraud claim is therefore dismissed.

        b.      Misrepresentation

The same is basically true for the misrepresentation claim. To advance a misrepresentation claim under Mississippi law, a plaintiff must prove the following elements:

> (1) a misrepresentation or omission of a fact; (2) that the representation or omission is material or significant; (3) that the person/entity charged with the

> negligence failed to exercise that degree of diligence and expertise the public is entitled to expect of such persons/entities; (4) that the plaintiff reasonably relied upon the misrepresentation or omission; and (5) that the plaintiff suffered damages as a direct and proximate result of such reasonable reliance.

*Horace Mann Life Ins. Co. v. Nunaley*, 960 So. 2d 455, 461 (Miss. 2007). Here, the Trustee describes his misrepresentation claim as follows:

> Defendant Koch represented to Plaintiff Sanders that it would not place birds on Sanders's farm if [he] did not perform unlawful, expensive, impossible, and unrealistic upgrades and demands that were designed as a pretext and subterfuge to put Sanders out of business because of his race. Koch engaged in this conduct unlawfully and improperly under all applicable federal and state laws.

Am. Compl. [8] at 38–39. Koch maintains that this pleading fails to factually show a misrepresentation (element one) or resulting harm (element five).

First, Koch says the Trustee has not pled a misrepresentation because he has averred that Koch did what it promised it would. The Trustee alleges that Koch said it would not deliver birds if Sanders failed to complete the upgrades and Koch in fact ceased deliveries when the upgrades were not made. Koch Mem. [15] at 27. There was no misrepresentation.

Koch next argues that the Trustee cannot show any damages were proximately caused by an alleged misrepresentation. *Id.* Koch says Sanders admitted he never complied with the static-pressure minimum requirement for Class B houses, and this failure alone would justify a decision to cease delivering chicks. *Id.* at 28; *see* Am. Compl. [8] at 7 ("The static pressure on Sanders's farm was only .05 apart from the .10 it needed to be, and it was going to cost Sanders about $7,000 ($1,000 per house) to make this increase.").

As with the fraud claim, the Trustee merely responds that "[t]his case is rich with evidence of fraud and misrepresentation and is pleaded in compliance with Rule 9(b) of the Federal Rules of Civil Procedure to defeat the motion to dismiss." Pls. Mem. [20] at 18. He never addresses Koch's substantive, procedural, and factual arguments, and fails to explain how

9

he has pleaded a plausible claim as to each essential element of his misrepresentation claim.  The claim is therefore dismissed.

    3.  Federal Claims Under PSA

Koch advances three arguments for dismissing the PSA claims found in Counts II and III: (1) 7 U.S.C. § 213 does not apply to live poultry dealers; (2) the Trustee has not pleaded, and cannot plead, likelihood of injury to competition sufficient to sustain a PSA claim; and (3) the Trustee has pleaded no facts to establish a regulatory violation.

     a.  Section 213

Koch first says 7 U.S.C. § 213, which is invoked in Count III, is inapplicable to poultry dealers.  The Trustee concedes in response this citation was in error.  Pls. Mem. [20] at 15 (admitting § 213 applies to livestock).  All claims under § 213 are dismissed.

     b.  Injury to Competition

Next the parties dispute the Trustee's ability to allege injury to competition, as required by 7 U.S.C. § 192 (Count III).  Under the PSA, it is unlawful for live poultry dealers to:

> (a) Engage in or use any unfair, unjustly discriminatory, or deceptive practice or device; or
>
> (b) Make or give any undue or unreasonable preference or advantage to any particular person or locality in any respect, or subject any particular person or locality to an undue or unreasonable prejudice or disadvantage in any respect[.]

7 U.S.C. § 192(a)–(b); *see* Am. Compl. [8] at 28 (Count III).

The Fifth Circuit—and at least five other circuits—have held this provision is intended "to protect competition and, therefore, only those practices that will likely affect competition adversely violate the Act."  *Wheeler v. Pilgrim's Pride Corp.*, 591 F.3d 355, 357 (5th Cir. 2009). Here, Koch says the Trustee has not pled, and cannot plead, likelihood of injury to competition. Koch Mem. [15] at 13–14 (citing *Wheeler*, 591 F.3d at 357).  The Trustee begrudgingly agrees

that showing competitive harm is required in this circuit but insists it has been properly pleaded. Pls. Mem. [20] at 16.

The Trustee's competitive-harm argument is at best conclusory. He focuses on the dearth of black poultry farmers in Mississippi, the history of racism in Mississippi and Koch's alleged discrimination against black farmers including Sanders. *Id.* Much of what he says is factual, and if Koch intentionally discriminated against Sanders to eliminate one of the few remaining black growers, then its conduct would be reprehensible. But § 192 has never been used as an anti-race discrimination statute; it addresses anti-competitive conduct. *Wheeler*, 591 F.3d at 357. And while the Trustee recounts a sad history of discrimination and lack of opportunity, he essentially acknowledges that the resulting harm to competition is yet to be shown:

> The Amended Complaint [Doc. 8, ¶¶ 72, 76, 123] addresses the issue of competitive harm in the antitrust context, but it is difficult to put in words without offending a population of people that deserve better. Experts will be best equipped to calculate how Defendants have gained a monetary edge over their competitors through their systematic elimination of black farmers to grow chickens for their companies.

Pls. Mem. [20] at 17.

This explanation does not address Koch's arguments that the alleged facts fail to show anticompetitive harm. *See* Koch Mem. [15] at 17–20. For example, the pleaded facts do not plausibly suggest that eliminating one of Koch's own producers would create a competitive edge over Koch's competition. And even if Koch was attempting to increase prices by reducing its own production—something that has not been sufficiently pleaded—that would not alone satisfy the competitive-harm requirement. *In re Pilgrim's Pride Corp.*, 728 F.3d 457, 462 (5th Cir.

11

2013). Accordingly, the Court finds that the Trustee has not plausibly pleaded the PSA claim asserted in Count III.[3]

      c.  Regulatory Violations

Finally, Koch contends that the Trustee has not pleaded facts to establish the regulatory violations advanced in the Amended Complaint. In Count II, the Trustee alleges three regulatory violations: (1) Koch's letter requiring Sanders to complete 23 upgrades violated 9 C.F.R. § 201.216 (¶ 96); (2) the delay in providing that letter violated § 201.100 (¶ 98); and (3) terminating the Broiler Growing Agreement without legitimate reasons or proper notice violated 9 C.F.R. §§ 201.100, 201.216, and 201.217 (¶¶ 97, 101, 102, 103, 104, 105). Am. Compl. [8] at 24–28.[4]

First, Koch insists §§ 201.216 and 201.217 do not prohibit conduct, but instead provide lists of criteria the Secretary "may consider" in determining whether the PSA has been violated. Koch Mem. [15] at 22; *see* 9 C.F.R. § 201.216 ("The Secretary may consider various criteria in

---

[3] That said, the harder question is whether § 192 covers race claims. As the Trustee acknowledges, this case would be a first. Pls. Mem. [20] at 5 (noting that no other court has recognized this theory). Judicial restraint counsels against unnecessarily addressing a questionable liability theory, and the Court is not ready to say whether the Trustee could potentially state a race claim under § 192. Accordingly, the Court concludes that dismissal should be without prejudice to the Trustee's right to seek leave to amend if he can assert sufficient, non-conclusory facts. Finally, the Court notes that the discrimination claim will go forward in Count I under § 1981, where the Trustee must show merely that Koch treated Sanders less favorably because of his race. Perhaps the Trustee has a good reason for pursuing the alleged race discrimination under the PSA, but it seemingly adds a significant layer of difficulty to his task at great cost and expense to everyone, including but not limited to the expense of the experts he referenced in response. It would also produce a difficult and time-consuming appeal should he prevail.

[4] The Trustee concedes that at times the PSA is incorrectly cited in the Amended Complaint. Pls. Mem. [20] at 15 (stating 7 C.F.R. § 201.200(a) should be 7 C.F.R. § 201.100 and 7 C.F.R. § 201.53 should be 7 C.F.R. § 201.100); *see* Koch Mem. [15] at 21 (contending 7 C.F.R. §§ 201.200 and 201.53 are inapplicable). The Court's overview of Count II includes those corrections.

determining whether a requirement that a poultry grower or swine production contract grower make additional capital investments over the life of a production contract or growing arrangement constitutes a violation of the Act."); 9 C.F.R. § 201.217 ("The Secretary may consider various criteria when determining whether a packer, swine contractor or live poultry dealer has provided a poultry grower or swine production contract grower a reasonable period of time to remedy a breach of contract that could lead to contract termination."). The Trustee failed to address this assertion in response, so the Court deems these claims conceded.

Next, Koch explains that the Trustee's claim under 9 C.F.R. § 201.100, which provides specific requirements for poultry-growing contracts, fails because the contracts at issue complied with these provisions. Koch Mem. [15] at 24–25. Again, the Trustee does not substantively address Koch's argument. Pls. Mem. [2] at 15–16 ("Defendants may have included language contained in the PSA in the contracts, but they did not comply with the requirements."); *id.* at 16 ("Plaintiffs also included 'all other relevant sections of the PSA' in its Amended Complaint, covering all applicable sections of the PSA, which Defendants are keenly familiar with and have a much deeper insight into than Plaintiffs." (citation to Am. Compl. omitted)).[5] Accordingly, the Court finds all allegations with respect to § 201.100 should be dismissed.

---

[5] Koch also asserted that "[b]ecause [the] PSA claims must be dismissed for failure to plead competitive injury, these regulatory claims fail as well." Koch Mem. [15] at 20–21. When the Trustee neglected to address this argument in response, Koch concluded that he "now concedes that he has no separate cause of action for enforcement of the regulations implemented pursuant to the PSA apart from his claims that Koch violated the statute itself." Koch Reply [24] at 10 (citing Pls. Mem. [20] at 15). The question has not been adequately explored by the parties, but potentially provides an additional ground for dismissal of any regulatory claims.

III.　Conclusion

The Court has considered all arguments raised by the parties; those not addressed would not have changed the outcome.  For the reasons stated, Koch's motion to dismiss [14] is granted in part and denied in part.

The Court finds as follows:  (1) Carlton Sanders is dismissed; the Trustee is the real party in interest; (2) the Trustee's claims are considered timely; (3) Koch's motion is granted as to the state-law fraud and misrepresentation claims; (4) Koch's motion is granted without prejudice as to the claim under 7 U.S.C. § 192; and (5) Koch's motion is granted as to the PSA regulatory claims.  The Trustee's claims for race discrimination and breach of contract will proceed.

**SO ORDERED AND ADJUDGED** this the 2nd day of July, 2020.

　　　　　　　　　　　　　　　　　　　s/ *Daniel P. Jordan III*　　　　　　　　　
　　　　　　　　　　　　　　　　　　　CHIEF UNITED STATES DISTRICT JUDGE