UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

STEPHEN H. SMITH AS CHAPTER 7 BANKRUPTCY
TRUSTEE FOR CARLTON SANDERS                                           PLAINTIFF

V.                                              CIVIL ACTION NO. 3:19-CV-721-DPJ-FKB

KOCH FOODS, INC.; KOCH FARMS OF MISSISSIPPI, LLC;
AND KOCH FOODS OF MISSISSIPPI, LLC                                   DEFENDANTS

ORDER

This dispute is before the Court on the following motions filed by Koch Foods, Inc.;

Koch Farms of Mississippi, LLC; and Koch Foods of Mississippi, LLC (collectively "Koch"):

(1) motion to exclude testimony of Robert Gibbs [134]; (2) motion to exclude the Trustee's

medical-causation experts [136]; and (3) motion to exclude testimony of Wayne Basford [138].

The Trustee has responded in opposition to each motion.  As explained, Koch's motions [134,

136, 138] are granted.

I.      Rule 702

Koch largely relies on Federal Rule of Evidence 702, invoking the Court's gatekeeper

function.  *See Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 n.7 (1993).  Rule 702

provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact
> to understand the evidence or to determine a fact in issue, a witness qualified as
> an expert by knowledge, skill, experience, training, or education, may testify
> thereto in the form of an opinion or otherwise, if (1) the testimony is based upon
> sufficient facts or data, (2) the testimony is the product of reliable principles and
> methods, and (3) the witness has applied the principles and methods reliably to
> the facts of the case.

In other words, "[t]he Court must determine whether (1) the expert is qualified by special

knowledge, (2) his opinion is relevant, and (3) [it] has a reliable basis."  *Howell v. Imperial*

*Palace of Miss., LLC*, No. 1:09-CV-7-LG-JMR, 2011 WL 13195946, at *1 (S.D. Miss. Jan. 11, 2011) (citing *Daubert*, 509 U.S. at 589).

Whether a proposed expert should be permitted to testify under Rule 702 "is case, and fact, specific."  *Hodges v. Mack Trucks Inc.*, 474 F.3d 188, 194 (5th Cir. 2006) (citation omitted).  And the decision to admit or exclude evidence is within the discretion of the trial court.  *Howell*, 2011 WL 13195946, at *1 (citing *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 141–46 (1997)); *see Peters v. Five Star Marine Serv.*, 898 F.2d 448, 450 (5th Cir. 1990) (noting decision of trial judge to allow expert testimony "is given broad discretion and will only be reversed if the decision is manifestly erroneous").

As to the scope of expert testimony, "[a]n opinion is not objectionable just because it embraces an ultimate issue."  Fed. R. Evid. 704(a).  "Nevertheless, an expert may never render conclusions of law."  *Goodman v. Harris County*, 571 F.3d 388, 399 (5th Cir. 2009) (citing *Snap-Drape, Inc. v. Comm'r of Internal Revenue,* 98 F.3d 194, 198 (5th Cir. 1996)).  "[I]t is the Court's job—not an expert witness's—to instruct the jury as to the applicable law."  *Mears v Jones*, No. 1:17-CV-6-KS-MTP, 2019 WL 3483157, at *1 (S.D. Miss. July 31, 2019).  "Nor[] may an expert go beyond the scope of his expertise in giving his opinion."  *Goodman*, 571 F.3d at 399 (citing *First United Fin. Corp. v. U.S. Fid. & Guar. Co.*, 96 F.3d 135, 136 (5th Cir. 1996)).  Finally, "[t]he party offering the expert must prove by a preponderance of the evidence that the proffered testimony satisfies the rule 702 test."  *Mathis v. Exxon Corp.*, 302 F.3d 448, 459–60 (5th Cir. 2002).

II.     Robert Gibbs

Robert Gibbs is a local practicing attorney with over 41 years of experience.  The Trustee retained Gibbs "to provide opinion testimony regarding Mr. Sanders'[s] contractual relationship with Koch."  Gibbs Op. [134-1] at 1.

After providing a summary of the facts, Gibbs opines "that Koch treated Sanders less favorably because of his race[,] and Koch's actions toward Mr. Sanders, an African American, are consistent with racial discrimination and the types of actions that courts and juries routinely find run afoul of a person's right to be free of racial discrimination under 42 U.S.C. § 1981."  *Id.* at 8; *accord id.* at 7 ("Mr. Sanders was treated less favorably than his white counterparts due to his race.").  Gibbs finds that Sanders is "entitled to both equitable and legal relief, including compensatory damages."  *Id.* at 8.  And he adds that Koch's actions "amounted to malice and/or reckless indifference to his federally protected rights," so, "a jury should consider whether Mr. Smith [sic] is entitled to an award of punitive damages."  *Id.*  Gibbs says his "opinions are based on [his] education, training, and experience," *id.*, and specifically mentions "review[ing] the history of Black farmers in America," *id.* at 6.

To begin, Koch says Gibbs offers an impermissible legal opinion on the ultimate issue in this case—whether Koch discriminated against Sanders.  *See Askanase v. Fatjo*, 130 F.3d 657, 673 (5th Cir. 1997) (affirming exclusion of inadmissible legal-opinion testimony).  The Trustee essentially concedes as much, acknowledging that "impermissible opinions that 'tell the trier of fact what to decide' are excluded."  Resp. [152] at 6 (quoting *Askanase*, 130 F.3d at 673)).  He nevertheless contends that Gibbs should be permitted "to offer both historical and practical context for legal/factual issues facing the jury," *id.*, reasoning that "district courts within the Fifth Circuit have demonstrated an appropriate willingness to permit expert legal opinion

3

testimony that provides legal context to the jury while stopping short of deciding an ultimate issue," *id.* at 5.

The Trustee premises that argument primarily on *Waco International, Inc. v. KHK Scaffolding Housing, Inc.*, where the Fifth Circuit held, "Although a lawyer may not testify as to purely legal matters, he or she may testify as to legal matters *that involve questions of fact*." 278 F.3d 523, 533 (5th Cir. 2002) (emphasis added).  Applied in that case, the court allowed an attorney's testimony about "issues an attorney typically investigates in determining whether to pursue an *ex parte* seizure order."  *Id.*  That testimony plainly addressed a fact question—the applicable standard of care.

That is not what Gibbs offers.  Gibbs's opinions regarding § 1981 either tell the jury how to rule (e.g., Koch discriminated against Sanders based on race) or explain the applicable law (e.g., listing types of damages Sanders is entitled to recover).  Neither is permissible.  *See Sowell v. United States*, 198 F.3d 169, 171–72 (5th Cir. 1999) (affirming exclusion of expert legal opinion telling jury how to rule); *Askanase*, 130 F.3d at 673 ("There being only one applicable legal rule for each dispute or issue, it requires only one spokesman of the law, who of course is the judge." (quoting *Specht v. Jensen*, 853 F.2d 805, 807 (10th Cir. 1998)).  That Gibbs bases his opinions on his observations about what the law requires or what other juries did in distinct race-discrimination cases does not speak to a question of fact in this case—other than the ultimate fact.

To the extent the Trustee wants Gibbs to provide "historical . . . context," Resp. [152] at 6, Koch asserts that he is "not qualified to testify about the history of African American growers or the poultry industry," Reply [160] at 8.  *See* Mem. [135] at 13–17.  Here, the Trustee touts Gibbs's extensive legal experience, but Gibbs admitted he has no experience with poultry

growing and has never worked as a historian.  Gibbs Dep. [134-2] at 46–47.  He said he took "a couple" of classes as an undergrad at Tougaloo College, *id.* at 10, touching "on the history of blacks in America, if you would, and that would include black farming," *id.* at 11.  That was in 1976.  *Id.* at 120.  When asked what he "reviewed" in preparing his opinion, Gibbs testified that he did "remember reading an article dealing with the discrimination of black farmers."  *Id.* at 113; *see also* Gibbs Op. [134-1] at 6 ("In order to reach my opinion, I reviewed the history of Black farmers in America.").  Gibbs went on to summarize the "history of black farmers" but provided no source information.  Gibbs Dep. [134-2] at 113; *see id.* at 113–14.

While Gibbs is certainly an experienced and respected attorney, the Trustee has not shown that he possesses special knowledge or expertise necessary to provide historical context regarding "Black farmers in America."  Gibbs Op. [134-1] at 6.  Anyone could read the same articles and then repeat what they say.  A similar thing happened in *In re James Wilson Associates*, 965 F.2d 160 (7th Cir. 1992).  As the Fifth Circuit described that Seventh Circuit holding, "[t]he problem was rooted in the fact that the architect was seeking to repeat information on a topic outside of his expertise instead of using 'what the engineer told him to offer an opinion within the architect's domain of expertise.'"  *Factory Mut. Ins. Co. v. Alon USA L.P.*, 705 F.3d 518, 525 n.5 (5th Cir. 2013) (affirming admission of expert testimony that used outside information under Federal Rule of Evidence 703 to formulate opinion within witness's expertise).  In other words, "an expert cannot present conduit testimony unless the expert adds special insights of his own."  3 Mueller & Kirkpatrick, Federal Evidence § 7:16 (citation and quotation marks omitted).  Gibbs has not done that; his special insights are essentially

instructions to the jury on the law or how they should decide the case.  Defendant's motion [134] to exclude expert testimony by Robert Gibbs is granted.[1]

III.    Medical-Causation Experts

The Trustee claims Sanders "suffered serious health consequences, including a stroke and heart attack, . . . [and] endured relentless stress and pressure" because of Koch's conduct.  Am Compl. [8] at 20.  To support these claims, the Trustee intends to offer testimony by three treating medical providers:  Dr. Telitha Grant-Spencer; Mary Rose Thomas, NP; and Dr. James Lock.  As non-retained treating providers, these witnesses were not required to offer written reports, but such providers are normally "limited to the facts and opinions contained in the produced treatment records."  *Kearns v. Kite*, No. 3:17-CV-223-GHD-RP, 2019 WL 4935452, at *2 (N.D. Miss. Jan. 9, 2019).  Aside from that limitation, Koch says their testimony "cannot satisfy *Daubert*'s standards for admissibility," as none of the experts can offer a causation opinion linking Sanders's physical issues to Koch.  Mem. [137] at 10.  Koch further submits that the Trustee failed to timely designate Thomas and Dr. Lock, which provides an independent basis for striking their opinions.

The Trustee's position is less concrete.  On the one hand, he agrees that the testimony should be limited to "the facts and opinions in their medical reports."  Resp. [157] at 1.  That essentially concedes the motion because he never suggests that those reports contain causation opinions.  But he then says the jury should hear the "opinions in their records to substantiate the fact that Sanders suffered health consequences."  *Id.*  As for Koch's delinquent-designation argument, the Trustee cites cases from this district that allowed late-designated physicians to testify as fact witnesses but precluded them from offering expert opinions found in their records.

---

[1] Koch offers other, equally compelling, reasons for excluding this testimony.

*See id.* at 4.  So, to the extent the Trustee endorses that approach as to Thomas and Dr. Lock, it would not allow opinions embedded in their records, though elsewhere he argues for admitting their opinions.

Starting with the Trustee's concession that the witnesses are limited to the facts and opinions in their records, this Order first examines whether the records reflect causation opinions that the witnesses are qualified to offer.  It will then address the timeliness of the Trustee's designations.

A.    Medical Causation

1.    Thomas

Mary Rose Thomas is a nurse practitioner who provided mental-health services to Sanders beginning in December 2020.  Thomas Notes [136-4] at 22.  Koch submits that a nurse practitioner is not qualified to testify as to medical causation.  *See Bell v. Mississippi*, 287 So. 3d 944, 962 (Miss. 2019) (noting Mississippi law does not allow a nurse to opine on medical causation); *see also Tyson v. Lakeland Nursing and Rehab. Ctr., LLC*, No. 3:15-CV-571-WHB-JCG, 2017 WL 5660019, at *3 (S.D. Miss. Aug. 31, 2017) (excluding medical-causation opinion by nurse practitioner).  Absent substantive argument from the Trustee, the Court agrees; Thomas cannot testify as to medical causation.

2.    Dr. Lock

Dr. Lock saw Sanders on July 24, 2018, "for checkup on blood pressure, blood sugar, and back pain" and to complete "disability paperwork" at Sanders's request.  Lock Notes [136-6] at 2.[2]  Koch says Dr. Lock's treatment notes make "no mention of medical causation tying

---

[2] The first three pages of this attachment to Koch's motion suggest Dr. Lock saw Sanders on only one occasion.  *Id.* at 1–3; *see id.* at 3 ("Encounter signed-off by James Lock, MD, 07/24/2018.").  The remaining pages (pages 5–12) appear to record visits with Dr. Grant-Spencer.  *Id.* at 6 ("This

Sanders's hypertension, diabetes, back pain, or mental conditions to Koch."  Mem. [137] at 16.
The Trustee's only response is that Dr. Lock "should be allowed to testify about the facts and
opinions disclosed in [his] medical records."  Resp. [157] at 5.  Having reviewed the records
provided to the Court, the Court confirms Dr. Lock never ties Sanders's conditions to Koch.  Dr.
Lock cannot testify as to medical causation.

   3. Dr. Grant-Spencer

  Finally, the Court considers Dr. Grant-Spencer, who saw Sanders on multiple occasions
from 2016 to 2021 for conditions that included ear pain, high blood pressure, diabetes, prostate
issues, and back pain.  Grant-Spencer Notes [136-2].  Koch submits that "Dr. Grant-Spencer's
medical records do not mention Koch, much less create a causal connection between Koch's
alleged conduct and Sanders's health issues."  Mem. [137] at 11.  In addition to the records,
Koch also highlights Dr. Grant-Spencer's deposition testimony:

> Q.  In connection with this note here under HPI ([History of Present Illness]), did
> you record anything at all relating to his relationship or former relationship with
> Koch Foods?
>
> A.  No.
>
> Q.  Did you note anything about him—that having anything to do with him being
> a poultry grower in the past?
>
> A.  No, and I wouldn't.
>
> . . . .
>
> Q.  Did you record anything in your medical record about anything relating to
> Sanders former relationship with Koch Foods having anything to do with his
> sudden report of his stress, anxiety and depression?
>
> A.  No, I did not.

---

chart has been electronically signed using individually secured passwords.  Attending Physician:
Telitha Grant-Spencer MD."); *id.* at 9 (same); *id.* at 10 (same); *id.* at 12 (same).

Grant-Spencer Dep. [136-3] at 68–69, 71.  Here again, the Trustee responds only that Dr. Grant-Spencer "should be allowed to testify about the facts and opinions disclosed in [her] medical records."  Resp. [157] at 5.  The Court finds neither the medical records nor the deposition testimony of Dr. Grant-Spencer presents a medical-causation opinion.

In sum, these witnesses may not testify regarding medical causation.  Thomas is not qualified, and neither Dr. Lock nor Dr. Grant-Spencer offered causation opinions in their medical records.   As discussed next, Thomas and Dr. Lock face yet another obstacle as to any other expert opinions.

B.      Delinquent Designations

Koch moves to exclude all expert opinions found in the medical records from Thomas and Dr. Lock because the Trustee failed to timely designate them as experts.  Such motions consider four factors:  "(1) the explanation for the failure to identify the witness; (2) the importance of the testimony; (3) potential prejudice in allowing the testimony; and (4) the availability of a continuance to cure such prejudice."  *Hamburger v. State Farm Mut. Auto. Ins. Co.*, 361 F.3d 875, 883 (5th Cir. 2004) (quoting *Geiserman v. MacDonald*, 893 F.2d 787, 791 (5th Cir. 1990)).

The Trustee makes no effort to address these factors, all of which weigh against allowing Thomas or Dr. Lock to testify as expert witnesses:  The Trustee offers no excuse for the nine-month delay in designating these experts; the testimony has diminished importance because neither witness offers testimony linking the treatment to Koch; potential prejudice exists because the designations occurred on the final day of discovery; and neither party has requested a continuance (which the Court would likely reject given the age of this case and the imminent pretrial conference).  *See id.*  Neither Thomas nor Dr. Lock may offer expert opinions.

That said, the Trustee seemingly concedes this point, suggesting that Thomas and Dr. Lock should be allowed to testify as fact witnesses because they were treating physicians who were "not a surprise to the opposing side." Pl.'s Mem. [157] at 4 (citing *Walker v. Target Corp.*, No. 2:16-CV-42-KS-MTP, 2017 WL 2903253 (S.D. Miss. July 6, 2017); *Gerald v. Univ. of S. Miss.*, No. 2:12-CV-147-KS-MTP, 2013 WL 5592454 (S.D. Miss. Oct. 10, 2013)).[3]

The Trustee cites *Gerald v. University of Southern Mississippi*, where Judge Keith Starrett excluded a delinquently designated physician from offering expert opinions but allowed him "to testify as a fact witness . . . regarding his treatment of the Plaintiff as reflected in any medical record documenting the treatment." 2013 WL 5592454, at *6; *see id.* n.7 (citing *BC's Heating & Air & Sheet Metal Works, Inc. v. Vermeer Mfg. Co.*, No. 2:11-CV-136, 2012 WL 3267543, at *1 (S.D. Miss. Aug. 9, 2012) (holding that plaintiff's treating physicians could not provide expert testimony as to causation, but could testify as fact witnesses concerning their treatment of plaintiff and related medical records); *Estate of Sims v. City of Aberdeen*, No. 1:09-CV-32, 2011 WL 132362, at *5 (N.D. Miss. Jan. 14, 2011) (prohibiting plaintiff's treating physician from offering expert testimony due to inadequate disclosure, but allowing physician to testify as fact witness regarding treatment).[4]

---

[3] That argument is perhaps offered in the alternative because the Trustee elsewhere urges the Court to allow the expert opinions found in their medical records. *See* Resp. [157] at 1.

[4] That leaves at least two muddy issues. First, it is unclear how the parties will identify the expert opinions found in the medical records and untangle them from the facts. The briefing on this point is scant, in part because Koch's motion treats the providers as experts (as they were so designated). Second, Koch recently filed a motion in limine seeking to exclude the providers' testimony absent competent evidence establishing a causal connection. The Trustee seems to suggest in the present briefs that Sanders can fill that void. The parties will need to brief whether Sanders is qualified to provide such testimony and whether the treatment evidence can be admitted without causation evidence.

The Court agrees that the delinquent expert designations would not prevent Thomas and Dr. Lock from testifying as fact witnesses.  In sum, neither Thomas nor Dr. Lock may offer the expert opinions that appear in their medical records.  As for Dr. Grant-Spencer, Koch's motion is granted because it sought to exclude her causation opinions, and this doctor offered none in her reports or testimony.  That would not preclude other opinions found in her medical reports, but those are subject to a separate motion.

IV.   Wayne Basford

Initially, Koch moved to exclude "the testimony of the Trustee's purported *expert*, Wayne Basford."  Mem. [139] at 3 (emphasis added).  Basford was the investigative attorney assigned to handle Sanders's complaint to the USDA.  In response, the Trustee clarified that Basford "is a fact witness" and not an expert witness.  Resp. [154] at 1; *see* Reply [161] at 2 (stating Koch sought to exclude Basford only as an expert witness, not as a fact witness).  Accordingly, the Court finds the motion to exclude expert testimony by Basford is conceded; Basford may testify as a fact witness.

V.   Conclusion

The Court has considered all arguments; those not specifically addressed would not have changed the outcome.  For the reasons explained, Koch's motions [134, 136, 138] are granted.

**SO ORDERED AND ADJUDGED** this the 2nd day of June, 2022.

s/ *Daniel P. Jordan III*
CHIEF UNITED STATES DISTRICT JUDGE

11