UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

STEPHEN H. SMITH,
CHAPTER 7 BANKRUTCY TRUSTEE                                    PLAINTIFF

V.                                          CIVIL ACTION NO. 3:19-CV-721-DPJ-FKB

KOCH FOODS, INC., ET AL.                                       DEFENDANTS

ORDER

This civil action relates to alleged discrimination by Defendants Koch Foods, Inc.; Koch

Farms of Mississippi, LLC; and Koch Foods of Mississippi, LLC (collectively "Koch") against

Carlton Sanders, an African-American poultry farmer under contract to grow broiler chickens for

Koch.  Specifically, Sanders says Koch refused to deliver flocks of chicks for him to grow unless

Sanders made expensive upgrades to his chicken houses that white growers were not required to

make.  He also claims that Koch breached the parties' contract.  Those claims are now pursued

by Stephen H. Smith as Chapter 7 Bankruptcy Trustee for Sanders.

The case is before the Court on nine motions in limine [168, 170, 172, 174, 176, 178,

179, 184, 186] and one motion to alter or amend [214] the Court's June 2, 2022 Order [188]

addressing Koch's three motions to exclude testimony [134, 136, 138].  Briefing has closed on

all motions.  For analysis purposes, the Court will group the overlapping issues.

I.      Motions in Limine

As summarized by the Fifth Circuit Court of Appeals:

A motion in limine is a motion made prior to trial for the purpose of prohibiting
opposing counsel from mentioning the existence of, alluding to, or offering
evidence on matters so highly prejudicial to the moving party that a timely motion
to strike or an instruction by the court to the jury to disregard the offending matter
cannot overcome its prejudicial influence on the jurors' minds.

*O'Rear v. Fruehauf Corp.*, 554 F.2d 1304, 1306 n.1 (5th Cir. 1977) (citation and quotation marks omitted).  It is important to note that, as with all in limine orders, the non-prevailing party may revisit the issue at trial outside the jury's presence.  *See Jackson-Hall v. Moss Point Sch. Dist.*, No. 3:11-CV-42-DPJ-FKB, 2012 WL 1098524, at *4 (S.D. Miss. Apr. 2, 2012).

    A.      Koch's Motion to Exclude Reference to Any Alleged Discovery Disputes [168]

    Plaintiff raises no real opposition to this motion and notes that any ruling would be equally applicable to both parties.  The motion [168] is granted; neither party shall mention discovery disputes before the jury.

    B.      Koch's Motion to Exclude Evidence Related to USDA Investigation [170] and
               Plaintiff's Motion to Allow USDA Documents [186]

    The Packers and Stockyards Program, an arm of the United States Department of Agriculture (USDA), conducted a lengthy investigation into Koch's practices.  That investigation originated under the Packers and Stockyards Act (PSA), and Wayne Basford was the lead investigator.[1]  When the USDA heard complaints of racial discrimination, it broadened the investigation to consider those claims.

    Plaintiff made a FOIA request for the USDA documents, and there are two motions in limine related to what Plaintiff received.  First, Plaintiff filed a motion related to a second production by the USDA pursuant to the FOIA request.  *See* Pl.'s Mot. [186].  Plaintiff says the second production included a letter and a 658-page document containing sworn witness interviews, including many from Koch employees who were deposed in this case.  *Id.* at 1.  The

---

[1] Wayne Basford testified that he worked in the Packers and Stockyards Program, which was part of the Grain Inspection, Packers, and Stockyards Administration (GIPSA) within the USDA. Basford Dep. [138-2] at 32.  Around 2018, GIPSA was reorganized, and the Packers and Stockyards Program became a division under the USDA's Fair Trade Practices Program.  *Id.* at 33.

motion "seeks an order allowing for the introduction, in whole or part, of the USDA's FOIA documents received by Plaintiff on May 27, 2022." *Id.* at 4.

That motion does not encompass any other USDA documents received at different times, but Plaintiff does oppose Koch's motion in limine seeking to exclude "testimony, evidence, or commentary concerning the investigation conducted under" the PSA and to exclude "the investigator, Wayne Basford, as a witness." Defs.' Mot. [170] at 1. Koch's motion also seeks to exclude negotiations between Koch and the USDA. Plaintiff concedes the latter, but the rest of these motions remains in dispute.

As a preliminary note, Plaintiff seems intent on introducing all of the nearly 2000 pages the USDA produced, describing the production as Basford's "reports." Pl.'s Resp. [193] at 7. The documents include various reports from Basford to the USDA, background material, affidavits, interview summaries, transcripts, and other documents (all of which is heavily redacted). Plaintiff has never identified a subset of the documents he would offer or have Basford discuss in his testimony.

Plaintiff overreaches. No one disputes that the USDA documents constitute hearsay. But Plaintiff says they are excepted and cites cases applying Federal Rule of Evidence 803(8)(A)(iii). Pl.'s Reply [207] at 2 n.2. That rule states: "A record or statement of a public office" is excepted from the rule against hearsay in a civil case if it sets out "factual findings from a legally authorized investigation." The rule does not apply to an entire investigative file. *See Cruz v. Aramark Servs., Inc.*, 213 F. App'x 329, 332 (5th Cir. 2007); *see also Moss v. Ole S. Real Est., Inc.*, 933 F.2d 1300, 1310 (5th Cir. 1991) ("Rule 803(8)(C) [the predecessor to Rule 803(8)(A)(iii)] by its terms allows only the introduction of the report setting forth factual findings; there is no provision for requiring the admission of an entire investigatory file.").

Here, Basford described the nearly 2000 pages as his "case file," not factual findings. Basford Dep. [140-15] at 55; *see* Fed. R. Evid. 803(8)(A)(iii).  And the vast majority of that file constitutes unexcepted hearsay within hearsay.  *See* Fed. R. Evid. 805; *see also Goodman v. Kimbrough*, 718 F.3d 1325, 1333 n.2 (11th Cir. 2013) (holding that "the statements of third-parties within that report are double hearsay not within any exception to the rule").

What's more, no subpart of Basford's case file constitutes "factual findings" as Rule 803(8)(A)(iii) contemplates.  In *Smith v. Isuzu Motors Ltd.*, the plaintiffs "argue[d] that the district court abused its discretion by refusing to admit three memoranda prepared by staff members of the National Highway Traffic Safety Administration (the 'NHTSA')."  137 F.3d 859, 861–62 (5th Cir. 1998).  The Fifth Circuit affirmed.  Applying the substantively identical language of former Rule 803(8)(C), the court held:  "The memoranda do not reflect 'factual findings' of the NHTSA.  Rather, they embody the positions and opinions of individual staff members, which the agency ultimately declined to accept."  *Id.* (collecting cases).

The present case is even more suspect.  Aside from the fact that there was no final determination or finding, the USDA's Packers and Stockyards Program—which investigates PSA violations—does not appear to regularly investigate race-based discrimination.  After Basford decided to look into racial discrimination as part of his investigation under the PSA, he "reached out to [the USDA's] Civil Rights office" to ask "how they look at racial discrimination cases."  Basford Dep. [140-15] at 58–59.  He quickly clarified however that the Civil Rights Office "most likely" addresses discrimination "in an employment setting," whereas "[t]his may or may not have been in an employment setting.  That's a whole other legal issue."  *Id.* at 59.

The Court could stop there, but other problems exist.  For starters, Koch has demonstrated a lack of trustworthiness under Rule 803(8)(B).  That rule states that government

reports are excepted from the rule against hearsay if "the opponent does not show that the source of information or other circumstances indicate a lack of trustworthiness." Fed. R. Evid. 803(8)(B). The trustworthiness considerations listed in the comments include "the special skill or experience of the official" and "whether a hearing was held and the level at which conducted." Fed. R. Evid. 803(8)(c) advisory committee notes to 1972 proposed rule.

There was no hearing, and Basford lacked relevant skill and experience. As Koch notes, the investigation started under the PSA, not § 1981 or a breach-of-contract theory. Basford testified that he had no experience with § "1981 per se," but that he does have some experience with "Mental Health Disability Law." Basford Dep. [140-15] at 19. When asked, "Did your investigation involve any investigation to whether Section 1981 of the Civil Rights Act had been violated," he responded, "Not specifically. Our investigation was conducted under the Packers and Stockyards Act. I was well aware of Section 1981." *Id.* at 247.

Plaintiff counters this by noting that the investigation morphed into an investigation of racial discrimination after Sanders called the office. Pl.'s Reply [207] at 6. That may be true, but Basford's deposition demonstrates his lack of relevant expertise. As noted earlier, when he decided to investigate, Basford had to call another office to ask how. Basford Dep. [140-15] at 58–59. "And from there [Basford] just designed a very informal, largely in [his] own head, investigation and plan of how to approach this investigation of possible racial discrimination, along with the additional capital investment investigation [i.e., the PSA investigation]." *Id.* at 59. Koch has demonstrated a lack of trustworthiness.

As for Rule 403 and the risk of unfair prejudice and confusion, Plaintiff argues that "similar to the value of an EEOC investigation in a Title VII discriminatory employment practices case or those conducted by any other federal agency." Pl.'s Reply [207] at 4 (citing

5

*Smith v. Universal Servs., Inc.*, 454 F.2d 154, 157 (5th Cir. 1972) and its progeny).  "EEOC determinations and findings of fact, although not binding on the trier of fact, are admissible as evidence in civil proceedings as probative of a claim of employment discrimination at issue in the civil proceedings."  *McClure v. Mexia Indep. Sch. Dist.*, 750 F.2d 396, 400 (5th Cir. 1985); *see also Smith*, 454 F.2d at 157.  But district courts retain "discretion under Rule 403 to exclude such reports if their probative value is substantially outweighed by prejudicial effect or other considerations enumerated in the rule."  *Cortes v. Maxus Exploration Co.*, 977 F.2d 195, 201–02 (5th Cir. 1992).

Cases regarding such reports begin with *Smith v. Universal Services*, a pre-Rule 803(8) case where the Fifth Circuit Court of Appeals concluded that an EEOC report was relevant and admissible:

> We think . . . that to ignore the manpower and resources expended on the EEOC investigation and the expertise acquired by its field investigators *in the area of discriminatory employment practices* would be wasteful and unnecessary.  The fact that an investigator, *trained and experienced in the area of discriminatory practices* and the various methods by which they can be secreted, has found that it is likely that such an unlawful practice has occurred, *is highly probative* of the ultimate issue involved in such cases.  Its probative value, we believe, at least outweighs any possible prejudice to defendant.

454 F.2d at 157 (emphasis added); *see also McClure*, 750 F.2d at 400 (following *Smith*).  This case is different.  As noted above, Basford lacked relevant skill or experience.

So, to the extent the evidence could overcome the hearsay objection, and assuming further that probative value exists, Basford's evidence is not nearly as probative as the evidence in cases like *McClure* and *Smith*, and there are obvious risks of unfair prejudice and confusion.  Notably, the jury could be unduly influenced by the opinions of a federal investigator, though that investigator had no relevant experience.  Moreover, it would be prejudicial, time consuming, and confusing to dump a heavily redacted and hearsay-laden 2000-page file into the record.  For

these reasons, the Court concludes that the USDA investigation file constitutes unexcepted hearsay and that admitting it would otherwise violate Rule 403.

Plaintiff makes a few additional arguments, but they are not persuasive.  For example, Plaintiff says the Court's order dismissing the PSA claim ruled that Basford would be allowed "to testify as a fact witness."  Pl.'s Mem. [193] at 1.  The Court did no such thing.  That Order granted Koch's motion to exclude *expert* testimony from Basford because Plaintiff "clarified that Basford 'is a fact witness' and not an expert witness."  Order [188] at 11 (citing Resp. [154] at 1; Reply [161] at 2).  The Court was not asked to consider whether Basford's fact-based testimony should be excluded.   Plaintiff also says "[a] party may not use a motion in limine as a substitute for a motion for summary judgment or summary adjudication of issues."  Pl.'s Mem. [193] at 1. That's true, but Plaintiff fails to explain why Koch would be entitled to judgment if Basford and his file are excluded.

While the Court has concluded that the file and purported fact findings from Basford should not be admitted, that does not mean that portions of the file (and Basford's testimony) might not otherwise be admissible.  For starters, the file contains Koch documents which could fall under Rule 802(d)(2).[2]  The depositions within the report could be read at trial if the witnesses are unavailable.  *See* Fed. R. Evid. 804.  And even if available, the witnesses could be impeached with their depositions (and other statements) contained in the Basford's file.  Or those statements might be used to refresh recollection under Rule 612.  These are just examples, but the Court will not enter a blanket prohibition against the admission of all materials found in the report.  The documents must be addressed separately.

---

[2] Some of those documents fall under Rule 408, and the parties have agreed that they would be inadmissible.

7

The same is true for Basford.  While Koch seeks an order precluding his testimony altogether, he could possess personal knowledge of relevant facts (e.g., statements Koch made to him).  Counsel for Plaintiff is cautioned, however, that if Basford is called, any subjects covered by this Order must be raised outside the jury's presence.

C.     Koch's Motion to Exclude Reference to Other Black Growers [172] and Motion to Exclude Other Claims or Lawsuits [178]

These two motions raise similar issues.  In the first motion, Koch seeks an order prohibiting Plaintiff "from introducing argument, testimony, or evidence about Koch's alleged conduct with respect to other [B]lack growers."  Defs.' Mot. [172] at 1.  The second motion seeks "to exclude reference to other claims or lawsuits."  Defs.' Mot. [178] at 1.  In his two responses, Plaintiff states that no prior suits will be offered and the only two Black growers he mentions are John Ingrum and Obbie Riley.

To begin, the Court grants the motions to the extent they relate to Black growers other than Ingrum and Riley.  The second motion [178] is also granted as to other lawsuits.  As for complaints by Ingrum and Riley, the Court has studied the parties' briefs' and supporting documents but concludes that a hearing will be required during the pre-trial conference.  The Court will, however, address a few remaining legal arguments to better frame that hearing.

Koch says evidence regarding other Black growers is irrelevant and unduly prejudicial, citing Rules 401 and 403.  But those rules do not make other-acts evidence per se inadmissible in race-discrimination cases, even when the other acts involve different decisionmakers.  *See Sprint/United Mgmt. Co. v. Mendelsohn*, 552 U.S. 379, 388 (2008) (finding no per se prohibition against evidence of alleged discriminatory acts by supervisors, other than those supervising the plaintiff, in ADEA case).  Instead, motions of this sort present "fact-intensive, context specific" inquiries.  *Id.*  Indeed, courts must be cautious when making "blanket pre-trial evidentiary

rulings" regarding other-acts evidence in discrimination cases. *Kelly*, 61 F.3d at 357 (noting that appellate court "should carefully consider" such blanket orders but affirming exclusion of evidence).

Koch also argues that other-acts evidence is not admissible to support a § 1981 claim and would be admissible only in "pattern and practice" cases under Title VII, where the claims are typically brought "on behalf of a class of plaintiffs." Defs.' Reply [210] at 2. That argument is not persuasive. Title VII and § 1981 are considered "parallel causes of action. Each requires proof of the same elements in order to establish liability." *Foley v. Univ. of Hous. Sys.*, 355 F.3d 333, 340 n.8 (5th Cir. 2003) (citing *Raggs v. Miss. Power & Light Co.*, 278 F.3d 463, 468 (5th Cir. 2002)). And both statutes recognize disparate-treatment claims brought by individuals— what Plaintiff asserts here.

To establish such claims, evidence of other discriminatory acts may be admissible. For example, in *McDonnell Douglas Corp. v. Green*, the Supreme Court addressed the "allocation of proof in a private, non-class action challenging employment discrimination." 411 U.S. 792, 800 (1973). In that context, the Court noted that "[o]ther evidence that may be relevant to any showing of pretext includes "petitioner's general policy and practice with respect to minority employment." *Id.* at 804–05. *Mendelsohn* even more directly contradicts Koch's argument. 552 U.S. 379. In that disparate-treatment age-discrimination case, "the District Court excluded testimony by nonparties alleging discrimination at the hands of supervisors of the defendant company who played no role in the adverse employment decision challenged by the plaintiff." *Id.* at 380. The court held "that such evidence is neither per se admissible nor per se inadmissible." *Id.* at 381.

The Fifth Circuit has followed suit in individual-disparate-treatment cases like *Vance v. Union Planters Corp.*, a gender-discrimination claim brought by an individual employee.  209 F.3d 438, 445 (5th Cir. 2000).  The *Vance* Court held:  "[E]vidence that Union Planters had been found to have discriminated against women in the past could help undermine its argument that it chose not to hire Vance only because of administrative concerns."  *Id.* (citing *McCorstin v. U.S. Steel Corp.*, 621 F.2d 749, 754 (5th Cir. 1980) (holding that evidence of a pattern of terminating older workers allowed a reasonable inference that plaintiff had been discharged on account of age)); *see also Ferguson v. Extraco Mortg. Co.*, 264 F. App'x 351, 352 (5th Cir. 2007) (noting, in individual ADEA claim, "[w]e have acknowledged that other-acts evidence may be relevant and admissible in a discrimination case to prove an employer's intent or pretext").  Accordingly, while Koch observes that Plaintiff is incorrectly relying on the more onerous requirements for pattern-and-practice cases, Koch has not demonstrated that other-acts evidence is inadmissible in individual cases asserting disparate treatment.

Of course, Rule 403 still applies.  *See Mendelsohn*, 552 U.S. at 388.  For example, courts should not permit a "parade of anecdotal witnesses, each recounting his own, entirely unrelated contention of [ ] discrimination at the hands of the defendant."  *Wyvill v. United Cos. Life Ins. Co.*, 212 F.3d 296, 304 (5th Cir. 2000) (holding that district court abused its discretion by allowing mini-trials on other-acts evidence).

Koch also objects to the evidence on relevance grounds and suggests that Plaintiff's facts are mistaken or incomplete.  *See* Defs.' Reply [212] at 3.  Koch offers its own record evidence suggesting that the other events are dissimilar or demonstrating why no discrimination occurred.  Normally, arguments like those would go to the evidence's weight, and many of Koch's arguments still do.  But Koch raised most of this in reply, and the Court cannot adequately

consider the Rule 403 issues without better input from Plaintiff.

The same is true for Koch's arguments regarding stray remarks.  According to Ingrum, a Koch employee allegedly told him that "when he was with Sanderson Farms he has some of US (Black Farmers) and we was just Lazy."  Ingrum Letter [212-2] at 3 (dated Dec. 18, 2009). These comments appear to be stray remarks but that does not mean they are necessarily inadmissible.  *See E.E.O.C. v. Mansville Sales Corp.*, 27 F.3d 1089, 1093–94 (5th Cir. 1994) (reversing judgment where relevant stray remarks were excluded from evidence); *see also Green v. Miss. Dep't of Transp.*, No. 3:19-CV-519-DPJ-FKB, 2021 WL 2367886, at *1–3 (S.D. Miss. June 9, 2021) (denying motion in limine to exclude stray remarks).

These issues cannot be fully addressed on this record; a hearing will help focus the evidence and the legal questions.  The Court therefore takes the two motions [172, 178] under advisement as they relate to Ingrum and Riley.

D.      Koch's Motion to Exclude Reference to Sanders as a Party or Victim [174]

As noted, Sanders filed for bankruptcy protection and his claim became part of the bankruptcy estate.  For that reason, the Trustee is now the real party in interest.  Koch therefore seeks an order under Rules 401 through 403 preventing Plaintiff from referring to Sanders as a "party" or a "victim."

Because Sanders insists Koch's conduct prompted the bankruptcy filing, that history will be relevant to damages; there is no need to refer to Sanders as a party or plaintiff when he is not. That portion of the motion [174] is granted.

That said, Plaintiff's counsel will not be precluded from referring to Sanders as a victim. Even if Sanders lost the right to pursue his claims, it is still Plaintiff's claim that Sanders was the victim of racial discrimination.  Moreover, Koch's motion regarding that term is too general, and

the term does not violate Rule 403 in the present context.  This portion of the motion [174] is therefore denied.

E.      Koch's Motion to Exclude Relative Wealth [176]

On May 27, 2022, Koch filed a motion hoping to prohibit Plaintiff "from introducing testimony, evidence, or commentary about Koch's relative size, wealth, income, or financial strength (other than in the punitive damages phase of trial, if any) or the wealth, income, or financial standing of its owner(s)."  Defs.' Mem. [177] at 2.  Plaintiff initially filed a memorandum that he twice mis-linked to this motion.  *See* [196, 197] (indicating docketing error and that entry should be disregarded).  After correcting the error, he never responded and seemed to concede Koch's motion.  According to Koch, Plaintiff acknowledged as much during the June 8, 2022 Zoom conference, and the Court's notes support that statement.  A few weeks later, on June 23, 2022, Plaintiff filed a belated response opposing Koch's motion.  *See* Pl.'s Resp. [208].

As an initial point, Plaintiff failed to file a timely objection.  "[O]nce a time limit has run, it may be extended only upon a party's motion and only if the court finds that 'the party failed to act because of excusable neglect.'"  *L.A. Pub. Ins. Adjusters, Inc. v. Nelson*, 17 F.4th 521, 524 (5th Cir. 2021) (citing Fed. R. Civ. P. 6(b)(1)(B)).  Plaintiff filed no such motion and has never explained why this delinquency should be excused.  While the Court did give the parties until June 23 "to file *replies* supporting their motions in limine," the Court offered no such extension to file initial *responses* opposing the other party's motions in limine.  June 9, 2022, Text-Only Order (emphasis added).  And even after Koch observed the delinquency in its reply and stated the applicable standards, Plaintiff never sought leave to file a sur-reply and explain why the response was late.  As such, the Court does not know why Plaintiff missed the deadline or why Plaintiff never filed an appropriate motion seeking leave to file a delinquent response.  Koch's

motion [176] is therefore granted.  That said, all motions in limine are subject to reconsideration at trial.  Before Plaintiff attempts to offer evidence of Koch's relative size, wealth, etc., counsel must raise the issue outside the jury's presence.

F.     Plaintiff's Omnibus Motion [184]

Plaintiff offers six categories of evidence that should be excluded in limine.  Each will be addressed separately.

1.     Reference to Sanders's Divorce

Plaintiff's motion seeks to exclude evidence related to Sanders's divorce, but Koch noted that the Amended Complaint blamed Koch for that divorce.  In his reply, Plaintiff abandoned that claim.  *See* Pl.'s Reply [213] at 1.  Koch made no other arguments to admit this evidence; the motion to exclude reference to Sanders's divorce is therefore granted.

2.     Reference to Sanders's Application for Social Security Disability

Plaintiff hopes to exclude evidence that Sanders sought and received social-security-disability benefits at some point after the contract with Koch ended.  Koch claimed the information was relevant to his ability to continue working for Koch.  But that statement prompted a reply from Plaintiff claiming that he was "mistaken" about the timing of events and that the disability benefits did not begin until several years later.  *See* Pl.'s Reply [213] at 1–2.  On this record, the motion to exclude reference to Sanders's social-security-disability benefits is granted.  If Koch believes Plaintiff's purported facts are wrong or that the information is admissible for other reasons, it must first raise the issue outside the jury's presence.

3.     Reference to Chicken Mortality Event in January 2015

This event is explained in greater detail in the Court's June 2, 2022 Order denying summary judgment, which is incorporated herein by reference.  *See* Order [187].  In short, it

appears that a large number of chicks froze to death during a cold snap three days after Koch delivered them to Sanders.  That event prompted the discussions between Koch and Sanders about fixing deficiencies in his chicken houses, which led to the core dispute over what Koch demanded.  Plaintiff hopes to exclude this evidence under Rule 403, asserting that it is unduly prejudicial.

To begin, the mortality event is highly probative.  It provides the factual reason for the very discussions that are now disputed; it demonstrates the conditions of the houses; and, from Koch's perspective, it shows why certain housing requirements are necessary.  While there may be prejudice if the jury concludes that Sanders was responsible for killing the birds, the prejudice is neither unfair nor substantially heavier than the probative value.  Plaintiff's arguments to the contrary go to weight.  *See* Pl.'s Reply [213] at 2 (claiming that Koch's evidence is "self-serving and misleading").

Plaintiff raises a different issue in reply (or at least raises a far more specific argument).  There, he says the Court should exclude photographs of the event.  *See id.* at 2–3.  While it is possible that the photographs could become cumulative or raise other concerns, district courts typically "refuse to consider arguments raised for the first time in reply briefs."  *Gillaspy v. Dallas Indep. Sch. Dist.*, 278 F. App'x 307, 315 (5th Cir. 2008) (citation omitted).  Moreover, the disputed photographs are not attached to the reply.  Regardless, photographs must be admitted into evidence before being shown to the jury.  That allows ample time for objection before a prejudicial publication; there is no need to rule in limine on that issue.  The motion to exclude reference to the mortality event (and photos thereof) is denied.

4.      Reference to White Growers Who Failed to Meet Specifications

Koch has argued that it severed ties with white growers who, like Sanders, failed to meet its static-pressure requirements for chicken houses.  The static-pressure requirement essentially determines how airtight the houses are, which impacts climate issues like internal temperatures.[3] Plaintiff says "[a]llowing Koch to reference or present evidence or testimony alleging that other 'white farmers' were denied chickens for the same reason as Sanders will be an unnecessary waste of this Court's time."  Pl.'s Reply [213] at 3.  He also claims that it would be unfairly prejudicial and confusing.  *Id.* at 4 (citing Rules 401 and 403).

The probative value of this evidence is not outweighed by Rule 403 concerns.  If Koch treated similarly situated white growers the same as Sanders, then it would speak to whether he was treated less favorably because of his race.  *See, e.g.*, *Washington v. Louisiana*, 628 F. App'x 914, 918 (5th Cir. 2015) (affirming summary judgment where evidence showed that plaintiff "was not treated differently because of her race and that similarly situated employees who acted as [she] did received the same treatment"); *Johnson v. JP Morgan Chase Bank*, 469 F. App'x 345, 348 (5th Cir. 2012) (finding no prima facie case of discrimination where comparators were treated the same); *Banks v. AT&T Wireless, Inc.*, 113 F. App'x 614, 616 (5th Cir. 2004) (same). The evidence is highly probative, and that probative value is not substantially outweighed by the risk of unfair prejudice, confusion of the issues, or waste of time.  Fed. R. Evid. 403.  But, as with any other-acts evidence that Plaintiff might be allowed to offer, the Court will not permit a series of mini-trials.

---

[3] The mortality event arguably highlights why the requirements are necessary.

5.      All Deposition Testimony Provided by Carlton Sanders

According to Plaintiff, Sanders's "blood sugar level increased during the December 17, 2020 deposition."  Pl.'s Mem. [185] at 5.  He therefore originally sought to prevent Koch from using that deposition.  *Id.*  In his reply, Plaintiff reframes the issue, limiting the request

> to exclude only those portions of Sanders's testimony when he had not taken his medicine and was clearly unraveling on the first day of his deposition.  Plaintiff likewise seeks exclusion of Sanders's not remembering that he was called the "N" word by Koch employees, a painful memory, pursuant to the testimony of his former helper, DeWayne Edmons, and his son, Cory Sanders.

Pl.'s Reply [213] at 4.

To begin, Federal Rule of Civil Procedure 32(a)(1) outlines when a deposition may be used at trial.  It does not exclude depositions from witnesses experiencing medical issues.  The rule also states, under subpart (a)(1)(B), that the deposition may be used "to the extent it would be admissible under the Federal Rules of Evidence."  Federal Rule of Evidence 601 states: "Every person is competent to be a witness unless these rules provide otherwise."  And the Advisory Committee Notes observe that determining capacity is "particularly suited to the jury." Fed. R. of Evid. 601 advisory committee's notes to 1972 proposed rules.

In addition, neither Sanders nor his attorney objected to the deposition when it occurred. Nor did they exercise Sanders's rights under Federal Rule of Civil Procedure 30(e)(1) to review the transcript, make "changes in form or substance," and provide "the reasons for making them." That would have been the perfect opportunity to explain any misstatements based on his blood sugar.  If, as Plaintiff says, Sanders was impaired, then he can explain that to the jury.  But this is a credibility determination that the jury must decide.

6.      Reference to Sanders's State-Court Case

This portion of the motion is granted as unopposed.

II.     Medical Evidence

Plaintiff designated three medical providers to offer testimony about treatment they provided to Sanders.  Koch challenged that testimony in a motion to exclude [136] that the Court granted.  *See* Order [188] at 6–11.  Koch also filed a motion in limine [179] arguing that without expert testimony, Sanders's medical conditions are inadmissible; that motion remains pending.  Related to that issue, Plaintiff filed a motion asking the Court to alter or amend [214] its Order [188] granting Koch's motion to exclude the medical testimony.  This Order starts with the motion to alter or amend.

A.     Motion to Alter or Amend [214]

Plaintiff's Motion to Alter, Amend or Vacate Judgment is not really an effort to vacate a prior order.  It reads instead like a response to Koch's motion in limine [179] regarding Sanders's medical condition.  Indeed, Plaintiff notes that he filed "this instant motion out of an abundance of caution."  Pl.'s Mem. [215] at 2.[4]

The disputed Order excluded expert medical opinions from two health-care providers because Plaintiff failed to timely designate them as experts.  Order [188] at 9–11.  Plaintiff never substantively responded to Koch's argument that the designations were delinquent and instead argued in response that the providers could still offer fact testimony regarding Sanders's medical history.  *See* Pl.'s Mem. [157] at 4.  The Court agreed with Plaintiff's fallback position, holding that the providers could testify as fact witnesses but could not "offer the expert opinions that appear in their medical records."  Order [188] at 11.

Plaintiff does not contest that holding.  He instead focuses the present motion on a

---

[4] Though Plaintiff filed his motion to alter or amend judgment under Federal Rule of Civil Procedure 59(e), the disputed Order was not a final judgment, and the portion of the Order with which Plaintiff takes issue was not even a holding.  Absent a final judgment, the more

footnote in the Court's Order pointing out "two muddy issues" that would still exist after the

Court's ruling on the motion to exclude:

> First, it is unclear how the parties will identify the expert opinions found in the medical records and untangle them from the facts.  The briefing on this point is scant, in part because Koch's motion treats the providers as experts (as they were so designated).  Second, Koch recently filed a motion in limine seeking to exclude the providers' testimony absent competent evidence establishing a causal connection.  The Trustee seems to suggest in the present briefs that Sanders can fill that void.  The parties will need to brief whether Sanders is qualified to provide such testimony and whether the treatment evidence can be admitted without causation evidence.

Order [188] at 10 n.4.  Those are mere observations—not rulings—and Plaintiff does not ask the

Court to alter or amend them.  Because there is nothing to alter or amend, the motion [214] is

denied.  The Court will, however, consider Plaintiff's arguments, construing them as a response

in opposition to Koch's pending motion in limine to exclude certain medical evidence.

     B.     Koch's Motion in Limine [179] Regarding Medical Causation

     Koch generally argues that "[P]laintiff's alleged injuries involve complex medical issues"

and that "lay testimony is inadmissible to establish the necessary medical causation."  Defs.'

Mem. [183] at 2.  As noted, the Court struck certain medical experts.

     Plaintiff hopes to plug the causation holes by having Sanders describe his own medical

conditions.  Those conditions include a stroke, heart attack, high blood pressure, sleeplessness,

stress, lack of appetite, and headaches.  Starting with the stroke and heart attack, Sanders

testified that he "feel[s]" like being "cut off" by Koch led to a stroke.  As Plaintiff correctly

acknowledges, Sanders is not a medical expert, and Plaintiff makes no argument for admitting

his testimony regarding the stroke or heart attack.  *See* Pl.'s Mem. [195] at 2.  Accordingly, any

reference to those medical events—or any conditions related to them—will be precluded in

---

burdensome standards of Rule 59(e) are inapplicable.  Rule 54(b) applies.

limine.  *See generally Cuevas v. E. I. DuPont de Nemours & Co.*, 956 F. Supp. 1306, 1313 (S.D. Miss. 1997) (holding in chemical-exposure case that treating physicians' testimony was inadmissible absent medical-causation evidence).

As for the other issues, Plaintiff argues that Sanders should be allowed to offer his "opinion that his high blood pressure, sleeplessness, stress, lack of appetite, and headaches stemmed from the conduct of Defendants."  Pl.'s Mem. [195] at 2.  Sanders is not qualified to provide causation testimony regarding high blood pressure.  While Plaintiff indicates that this is appropriate lay testimony, Sanders had a prior history of hypertension, and he lacks any demonstrated expertise to more precisely testify regarding causation.  Absent causation evidence, the jury should not hear about high blood pressure Koch allegedly caused.

The rest of it is different.  Sanders is uniquely qualified to testify to the cause of his sleeplessness, stress, lack of appetite, and headaches.  To prevail on claims for emotional distress, "there must be a specific discernable injury to the claimant's emotional state, proven with evidence regarding the nature and extent of the harm."  *Brady v. Fort Bend Cnty.*, 145 F.3d 691, 718 (5th Cir. 1998) (quotation mark omitted)).  "The plaintiff's own testimony, standing alone, may be sufficient to prove mental damages but only if the testimony is 'particularized and extensive' enough to meet the specificity requirement discussed above."  *Hitt v. Connell*, 301 F.3d 240, 250–51 (5th Cir. 2002) (quoting *Brady*, 145 F.3d at 718).  Sanders will be allowed to address these issues, and those health-care providers who treated these conditions will be allowed to factually corroborate that he sought medical attention for them.

III.   Conclusion

The Court has considered all arguments raised by the parties; those not addressed would not have changes the result.  For the reasons described, the Court finds as follows:

- Koch's Motion to Exclude Reference to Any Alleged Discovery Disputes [168] is granted; neither party shall mention discovery disputes before the jury.

- Koch's Motion to Exclude Evidence related to the USDA Investigation [170] is granted as to negotiations between Koch and the USDA and is granted as to the USDA file and purported fact findings by Basford.  Plaintiff's Motion in Limine to Allow USDA Documents [186] is denied.  That said, the Court does not enter a blanket prohibition against admission of all materials found in the USDA file (or Basford's testimony), as discussed above.

- Koch's Motion to Exclude Reference to Other Black Growers [172] is taken under advisement as to Ingrum and Riley and granted as to all other growers.

- Koch's Motion to Exclude Other Claims or Lawsuits [178] is taken under advisement as to claims by Ingrum and Riley, granted as to all other growers, and granted as to other lawsuits.

- Koch's Motion to Exclude Reference to Sanders as a Party or Victim [174] is granted as to references to Sanders as a party and denied as to references to Sanders as a victim.

- Koch's Motion to Exclude Relative Wealth [176] is granted.

- Plaintiff's Omnibus Motion [184] is granted as to Sanders's divorce, is granted as to Sanders's social-security-disability benefits, is denied as to the chicken-mortality event, is denied as to Koch's treatment of white growers, is denied as to Sanders's deposition testimony, and is granted as to Sanders's state-court case.

- Plaintiff's Motion to Alter or Amend [214] is denied.

- Koch's Motion in Limine to Exclude Plaintiff's Causation Testimony [179] is granted as Sanders's heart attack, stroke, and high blood pressure and is denied as to Sanders's sleeplessness, stress, lack of appetite, and headaches.  As to the latter, health-care providers who treated these conditions will also be allowed to factually corroborate that he sought medical attention.

The parties are directed to confer and contact Courtroom Deputy Shone Powell with potential dates to set this matter for a pretrial conference and hearing on the portions of motions [172, 178] that were taken under advisement.  Ideally, the pretrial conference and hearing should occur within 60 days of this Order.

**SO ORDERED AND ADJUDGED** this the 18th day of November, 2022.

s/ *Daniel P. Jordan III*
CHIEF UNITED STATES DISTRICT JUDGE